## Francies's Appeal.

1. The use by an owner and his tenants of a yard in the rear of his four or five houses, paved and open for all the tenants—the common use of one hydrant on the premises, with city water mains within a few feet of each house for separate connection—the common use of one alley, to a certain street between two of the houses and a footpath to another street, neither of which abutted on the property of the complainant, nor were essential for the enjoyment of his property as "ways of necessity," cannot be taken to be an apparent necessity and permanent dedication to a common use in such manner as to subject the property to a continuance of the same condition in the hands of separate owners.

2. It was contended by the complainant that it was necessary that the alley way should pass as an easement, because of the great disadvantage resulting to his property from its loss as a means of access to the yard for the purpose of cleaning the vault or privy on his premises. The only way by which this work could be done without the use of the alley was to pass through the house on complainant's own ground, or perhaps to sink the vault to the gravel. *Held*, that these difficulties or disadvantages, however great, ought to have been provided for by express grant if the complainant expected to use other ground than his own to surmount these difficulties.

November 10th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1880, No. 208. In Equity.

Appeal of John Francies from the decree of the court refusing an injunction to remove certain obstructions from an alley-way and watercourse.

Francies, in his bill in equity against William Shannon, in brief, complained:—

1. That seventeen years prior to the time of filing his bill, Charles Stafford owned the land now belonging to plaintiff and defendant, at the corner of Grantham street and River avenue, in the city of Allegheny, leaving an open yard, in the rear of these houses paved with brick, for the common use of each and all, and for light and air, and with an alley-way between two of the houses to Grantham street, and an alley-way in the rear of said houses to River avenue, for the use of all the said houses and their tenants, and with a permanent drain and watercourse from the plaintiff's houses into and through said alley-way, running to said Grantham street, and with a hydrant opposite said alley in said yard, for the common use of all said houses, and that the same had existed, and continued to exist, and were in use for the necessary convenience and use of said houses until that time. 2. That complainant bought and obtained a deed for part of said lot, including two houses, March 24th 1874, which deed conveyed also all improvements, ways, watercourses, privileges, appurtenances, &c. 3. That defendant held a mortgage for $6700 on the whole property at the time of plaintiff's purchase, and plaintiff paid him $2300 of the purchase-money for a release of said mortgage. 4. That in 1875 the defendant pur-

[Francies's Appeal.]

chased, at sheriff's sale, on his mortgage, the balance of said property. 5. That, until recently, the defendant had respected the plaintiff's rights in said alley-ways, watercourse, &c., but had then proceeded to build over and obstruct and entirely destroying the same, entirely shutting in the plaintiff's property from all access to said alley-ways or hydrant, and stopping off all flow of water by said watercourse and confining it to plaintiff's yard, and, although notified not to do so, continued to put up such obstructions. 6. The complainant sets out his irreparable damage. 7. He prays for an injunction, the removal of the obstruction, &c.

Defendant's answer, in substance: 1. Denies the watercourse as extending beyond defendant's houses, and denies correctness of plaintiff's plan as to that and the alley-way to River avenue. Avers the alley-way to Grantham street is covered. Denies the yard was left open for the common use of the house, and that the hydrant was for their common use.

Denies that the yard was so paved as to have a regular, permanent surface drain by the alley to Grantham street, or that the way or watercourse were open, manifest, visible and permanent. 2. Admits plaintiff's alleged purchase and deed, but denies its effect to give any easement over his property. 3. Admits receiving $2000 of plaintiff's purchase-money, but denies that it was paid otherwise than as a payment by Stafford on the mortgage debt. 4. Admits plaintiff's fourth paragraph. 5. Denies that he ever recognised or respected any claim such as made by plaintiff, and asserts that the plaintiff is not by his obstructions shut off from his premises; and asserts that they do not prevent the flow of water from the rear of his houses, and that he could, at small expense, obtain other drainage. 6. Denies the sixth paragraph of plaintiff's bill, and the plaintiff's right to have relief.

[The plan on following page will show the situation of the several lots, the brick work and the watercourse in question.].

The case was referred to a master, Christopher Magee, Esq., who made the following report:—

"That Charles Stafford, in 1860, purchased and held the property on the corner of River avenue and Grantham street, in the Fourth ward of the city of Allegheny, and now owned as two distinct properties by the parties to this proceeding. That at the time of the purchase and for some time thereafter, the buildings on the property consisted of one frame house fronting on Grantham street, near the corner of River avenue, and two other connected frame houses on Grantham street a few feet from the northern line of the lot. That between the frame near the corner and the other two houses, there was an open space used as a yard, about twenty-eight to thirty feet in front. In this open space, Stafford built two brick houses with a three feet covered alley-way between them; having just moved the two connected frames to the northern line of his lot and

forward to the street line. In the rear of all the houses, there was a yard about thirteen feet in width extending from the northern line of the lot to River avenue. Stafford, as the owner of the entire property, did not separate the yards to the houses by fences, nor did he provide hydrants and separate drainage and alley-ways for the use of each house. He occupied one of the houses himself and rented the others, and he and his tenants used in common one hydrant which stood near the back line of the property, and opposite the alley-way between the two bricks, and in addition used at their pleasure and convenience the alley-way between the bricks and the foot-path to River avenue as a means of access to the back yards. Two privies or vaults stood on the ground, one in the rear of the two upper frame houses for their use, and the other in the rear of the lower brick house for the use of the corner frame and the two brick houses.

" The yard in the rear of all the houses except the corner frame, was paved with bricks so as to carry the water by the alley-way between the brick houses to Grantham street; a gutter extending from the lower line of the upper frame house, commencing at the foot of the conductor close to the house and running to a point about two feet distant from the rear line of the upper brick house and thence across the lot in the rear of the upper one to the alley-way between the brick house, and thence by the same to Grantham street. This gutter was a shallow depression in the pavement, an inch or two in depth, such as is usually constructed in pavements to carry away the water falling upon the roofs of houses, when no sewerage is provided. It was not prominent nor marked in its character, but was visible to any one examining the property, and answered the purpose for which it was used.

" This was the condition of the property in 1872 when Charles Stafford mortgaged the entire property to William T. Shannon, the present respondent, to secure the payment of $6700. On the 24th of March 1874, about one year and seven months after the making of the mortgage, Stafford made a deed, which was acknowledged on the 31st of same month and recorded on the 9th of April following, whereby he conveyed to John Francies, the complainant, a portion of his land and houses in words following, viz. : " All that certain lot or piece of ground situated in the Fourth ward of the city of Allegheny, &c., bounded, &c. Beginning on Grantham street, on the west side thereof eighty-four feet north of River avenue at the line of property now or formerly of Margaret Boyd, thence by said last-mentioned line forty-five feet to the line of property now or formerly of Margaret Force, thence by the line of said property of Margaret Force thirty-one feet, thence eastwardly parallel with the said line of the property of Margaret Boyd, forty-five feet more or less to Grantham street, thence northwardly by Grantham street and parallel with the line of the said property of

Margaret Force to the place of beginning; being part of the same property conveyed by F. H. Donlan et al., to the said Charles Stafford by deed dated October 25th 1860. The privy or vault on the above described property to be removed by said grantee at his option, and the same to be clear and exempt from any right, easement or servitude by reason of the said privy or vault or usage thereof in favor of the said Stafford and wife or appurtenant to the adjoining property owned by them or either of them, together with all and singular the buildings, improvements, ways, waters, watercourses, right, privileges, hereditaments and appurtenances, whosoever thereunto belonging or in any wise appertaining.' The consideration paid by Francies was $2300, of which $2000 came to the hands of W. T. Shannon, and was entered as a credit on his mortgage.

" On the 7th of April 1874, W. T. Shannon, the holder of the mortgage, entered on the record the following release of the lien of his mortgaged premises, to wit: 'For value received I hereby release from the lien of this mortgage all that portion of the property described therein, as follows: Beginning on Grantham street eighty-four feet north of River avenue and extending along said street toward River avenue thirty-one feet, and extending back from Grantham street of that same width forty-five feet, being the same lot which C. Stafford conveyed to John Francies, by deed dated March 24th 1874.'

" On the 1st day of March 1878 the said William T. Shannon, at a sheriff's sale, on and by virtue of his said mortgage, bought the premises described in the mortgage (forty-five feet by eighty-four feet) 'excepting so much of the northern portion of said ground and property fronting thirty-one feet on Grantham street, by forty-five feet deep, as was conveyed by Charles Stafford and wife to John Francies, by deed dated March 24th 1874, and recorded in deed book vol. 326, page 420.'

" The rights and privileges conferred upon the parties, by their respective deeds, give rise to the questions in dispute in this proceeding.

" The complainant, in support of his claim, offered a plot made by Sarah Kephart, a witness to show in connection with her testimony, the condition of and manner in which the property was owned, prior to and after the purchase by Stafford. The plot, although very roughly drawn, shows, with the testimony of the witness, the early condition of the property, and the fact that the property now presents a very different appearance. In some particulars, perhaps, after the improvements made, the same things may continue as before : it may, or it may not be that the drainage happens, from the upper frame house, to be on, or nearly on, the same ground ; but the changes in the condition of the property are so radical that the

master does not attach much importance to the shape or use of the property prior to its present shape and condition. ,

" The complainant also offered in evidence a notice dated April 30th 1877, served on the respondent, notifying him not to obstruct the use of the hydrant in the yard, as complainant claims the same to be an easement to his property. This notice was not regarded by the respondent, but the end was that the complainant put a hydrant on his own premises, for his own use, and, by permission of the respondent, connected the pipes thereof with the water pipes on respondent's property. The master deems this course to have been an amicable adjustment of the dispute so far as the same relates to the common use of the hydrant in the yard.

" The complainant proved that the privy or vault on his lot could not be cleaned, except by carrying the contents through the house, if deprived of the use of the alley-way between the two brick houses, and the outlet to River avenue by the path : and that the mode of cleaning through the house was very objectionable and inconvenient.

" The respondent offered in support of his denial of the claimant's demands a receipt by Kitchen and Carson, plumbers, dated November 22, 1875, given to Wm. T. Shannon, the respondent, for t`.e cost of a new hydrant in place of the old one in dispute. The evidence connected with the bill was that Mr. Francies endeavored to pay the one-half thereof, but that Mr. Shannon, who had ordered the work, refused to have any participation by others in its payment. The bill and evidence connected therewith show that at a very early date in their ownership, the parties were in dispute as to their rights ; that the least objectional of the easements claimed by the complainant, was denied by the respondent.

" Also, a copy of hand bill and advertisement purporting to be for the sale of ' two brick dwellings and one frame dwelling of six rooms, hall, kitchen and cellar.' The master considers this paper immaterial, as it has no reference to a sale of the houses now owned by Francies ; the sale is not advertised for a time within six months of the date of Mr. Francies's deed ; and no sale took place of the property advertised, as it is the same property afterwards purchased by Mr. Shannon, at the sheriff's sale on his mortgage ; and if any statements by the auctioneer were made relating to the common use of the alley way, it would be assumed to apply to the use by the houses between which it lay, and not to distant property not for sale, without express mention.

" The hand bill and advertisement by the owner of the whole estate for sale of a part, may, however, have some weight as indicating no intention in the arrangement of the parts or in their separation, to create an easement or servitude, or that any permanent disposition of the property had been made for common use: they

also tend to rebut the idea of notice to Shannon thereby of any easement or claim thereof in his property.

"The respondent further offered in evidence a plan made by competent parties from measurements on the ground, which shows accurately the size and condition of the property and its surroundings as they are to be found at the present time. The plan shows the obstruction complained of by the erection of the brick kitchen begun about the time of the commencement of this proceeding, and completed shortly afterwards, upon the court's refusal to grant a preliminary injunction to restrain. Prior to the building of the present kitchen, the brick houses and the frames, as indicated by the plan, were all of the same depth.

"The respondent also offered a plan made in the city engineer's office of Allegheny city, from measurements made on the ground. It shows the comparative height of the yard and the street in front of the house of Mr. Francies, and with the oral testimony establishes the fact that a reasonable and not unusual mode of drainage for city lots can be secured over the complainant's own lot at a cost not exceeding $25. The fall from the yard to the gutter in the street will permit the use of a drain pipe from six to twelve inches in diameter, a pipe large enough for ample drainage and to be readily kept open.

"The respondent proved that the contents of the privy on complainant's lot could be removed through his house. That such mode of removal was not adopted except in case of necessity, but if needful it could be and had been done in that way.

"It is also reported as a fact that the respondent has not since the date of this mortgage given any recognition of the claims set up by the complainant in his bill, but on the contrary, since his purchase at sheriff's sale, has constantly denied and refused, as matter of right, any claimed privileges on or over his property, and on one occasion prior to or about the time of the purchase by Mr. Francies, refused him any use of the alley-way, a privilege at that time requested for his present property.

"On these facts the complainant asserts in his bill the right to the following easements in the property of the respondent, and that they have been unlawfully obstructed. They are separately stated by the master as follows, to wit:—

"1. That the back yard of the four upper houses from River avenue was paved with brick, and was always kept open for the common use of each and all, and for light and air necessary therefor.

"2. That opposite the alley between the second and third houses of the respondent, was placed and has ever since remained, a hydrant supplying water for the general and common use of the tenants of all said houses.

"3. That the said yard was so paved, and has ever since the

building of said houses to this time, been so kept that the third, fourth and fifth houses from said River avenue had a regular and permanent surface drain and watercourse and right of way and foot-path open, visible and permanent in the plain sight of each and all persons coming to the premises, close in the rear of said houses down to, into and over said alley-way and watercourse between said second and third houses out into Grantham street, the right to which, and to have and maintain the same for the convenience and as necessary to said houses has at all times existed and still exists in full force as to all the owners and tenants thereof.

"4. That a right of way from said upper houses, along in the rear of all said houses, and parallel with Grantham street, down to River avenue, as the only outlet direct into said avenue, has, at all times, existed and been maintained for the use of said houses ever since their erection, until the present time.

" The law governing easements, applied to the facts in this case, must determine the rights of the parties, unless the bill be dismissed, as urged by the respondent, for the reason that the rights asserted have not been first adjudicated at law, a question which will be referred to hereafter.

" The doctrine of easements and servitudes seems to be well settled in the following particulars, viz.:—

1. " That all easements are interests in land, and depend for their creation on a grant or on prescription, which presumes a grant ; and that a parol license is insufficient for the purpose of their creation. That grants are either express or implied.

"2. That easements are of two classes, viz.: continuous, those of which the enjoyment is or may be continual, without the interference of man, as a running stream, a water spout, or the right to light and air, and discontinuous, such as can only be had by the interference of man, as rights of way, or a right to draw water.

" 3. That, as a general rule, continuous easements pass, as implied grants by construction of law, and discontinuous easements do not.

" 4. That all easements, of whatever class, which pass by implication or construction of law, must be necessary, apparent and permanent in their character : that a temporary provision or arrangement made for the convenience of the entire estate, will not constitute the degree of necessity and permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties.

5. " That no easements in one piece of land can be said to be appurtenant to another by reason of any use made of the two so long as they both belong to the same person. But privileges have been held to pass as incident to the same, and a correspondent burden imposed upon the other from the nature of the estate, the management of the parts of the estate, and the degree of necessity

[Francies's Appeal.] .

·there is of giving such a construction to the conveyance, in order to give it a reasonable effect.

"It will be observed that all the easements claimed by the complainant and heretofore stated, with the exception of the "permanent surface drain and watercourse," and right to "light and air," belong to the class designated as discontinuous easements, and are not incident or appurtenant to a grant, by implication or construction of law, unless there is necessity from the nature of the estate, and the management of its parts, that such a construction to the conveyance should be given in order to give it a reasonable effect.

"It will be observed also in this case there is no express grant, no right by prescription, and no ' way of necessity' claimed; whatever easements the complainant may have are acquired from the conveyance of Stafford and wife as incident thereto by implication or construction of law, he takes only such right and privileges as the law in the absence of express grant will confer.

"The alleged facts upon which the complainant bases his right to the easements claimed are, that the yard in the rear of the four upper houses was paved with brick, and left open for the common use of all the houses ; that one hydrant supplied water for the general and common use of the tenants of all the houses ; that the said yard has been so kept that the complainant's houses had a regular and permanent surface drain and watercourse, and right of way between the brick· houses to Grantham street; that a right of way to River avenue has at all times existed and been maintained for the use of said houses.

"Leaving out of consideration the allegation of the existence of a ' permanent drain' and admitting all the other allegations to be true of the manner in which the owner of the entire property and his tenants used the same, no easements or servitudes are thereby created. The creation of easements or servitude by the owner of the whole estate, which attach as implied grants to the parts when separated, depends not upon common use by the owner and his tenants, but upon the arrangements made of the parts whereby the easements and servitudes become necessary to give reasonable effect to the different conveyances.

"The broad principle upon which such easements are created or pass by implication is that the grant of a thing carries all things as included, without which the thing granted cannot be enjoyed, things incident and directly necessary to the thing granted.

"The easement must be necessary, and the degree of the necessity as indicated by the authorities must be greater than is shown by provisions and arrangements made for the convenient enjoyment of the property as a whole.

"The decision of the courts referred to by counsel wherein discontinuous easements have been held to pass as appurtenant with

out express grant are such as have no doubt of the owner's intention in the arrangement and use of the parts to create a permanent easement and common use for the enjoyment of the several parts of the property into whomsoever's ownership they may come, such as alley-ways between or abutting on the several parts or where houses in their construction require necessary support from each other; but the cases do not seem to extend the doctrine beyond easements or servitudes of this character. The master has found no cases where the doctrine has been extended beyond such manifest and intended common use and where the benefits and burdens consequent appear to be clearly mutual.

"In the opinion of the master, the use by the owner and his tenant of the yard in the rear of his four or five houses, paved and open for all; the common use of one hydrant on the premises, with city water-mains within a few feet of each house for separate connection; the common use of one alley-way to Grantham street between the two brick houses and a foot-path to River avenue, neither of which abutted immediately on the property of the complainant, nor were essential for the enjoyment of the property as 'ways of necessity' cannot be taken to be an apparent necessity and permanent dedication to a common use in such manner as to subject the property to a continuance of the same condition in the hands of separate owners; the use in the way shown is such as would reasonably be adopted by one owner as matter of convenience, but not such as would be reasonably made with a view to separate ownership and where more than one person had control.

"It is contended by the complainant that it is necessary that the alley-way should pass as an implied easement, because of the great disadvantage resulting to his property from its loss as a means of access to the yard for the purpose of cleaning the vault or privy on his premises. The only way by which this work can be done without the use of the alley-way or foot-path, is to pass through the house on his own ground, or perhaps to sink the vault to the gravel. These difficulties or disadvantages, however great, ought to be provided for by express grant, if the owner of the vault or privy expects or intends to use other ground than his own to surmount the difficulties. There is, however, a stronger argument to show that it was not intended as a burden on adjoining property, to be found in the deed itself; the deed provided for a separation of the properties so far as the vault or privy is concerned; and the difficulties of the care of such vault and its cleaning cannot legitimately be made as a reason for the creation of a servitude upon the respondent's property. It is a fact in evidence that the vault can be cleaned through the complainant's own property, not a preferable mode where other means can be had, but still a way in the event of necessity and such as sometimes has to be adopted; it is an inconvenient way it is true, but to the other property the use

15 Norris—14

[Francies's Appeal.]

of the alley for the purpose is also objectionable and inconvenient, the only difference is in the degree; and under the general rule that each property must take care of itself, it seems but right that the complainant's property should bear this inconvenience.

"What has been said has been more particularly suggested in the consideration of the discontinuous easements, although applicable as well to continuous easements. We come now to consider the right of the complainant to the continuous easements claimed. They are 1, the right to 'light and air,' and 2, the right to 'a regular and permanent surface drain and watercourse' over the respondent's lot and by the alley-way between the brick houses to Grantham street.

"The first claim, that of light and air, has not been shown to have been effected further than is the case when any building has been erected on the line of the property, without interference in any respect with windows: it cannot be said to be an interference with light and air improperly made, unless any improvement whatever of a vacant lot can be said thereby to unlawfully interfere with light and air; in this case it does not become needful to determine how far the doctrine with reference to "light and air" in this state has been extended, or whether applicable at all. Under any view of the facts, it could not be said here that any unlawful interference has occurred.

"The second claim, that of 'a regular and permanent surface drain and watercourse,' is an easement which has been held to pass by implication. The evidence in this case shows the claim to be a surface drain, and not for what is termed and known as a regular watercourse, which implies a constantly running stream of water.

"The character of this regular and permanent surface drain 'has been given;' it was a shallow gutter in the pavement, the least and most inexpensive provision that could be made to carry off the water: it answered the purpose for which it was used, and may be said to have been visible to any one examining the property.

"The easement, however, to pass as an implied grant, must possess the additional qualities of necessity and permanency.

"If it was not necessary, it would not pass as incident to the conveyance. The fact that it is a more convenient means of drainage than can be had over the complainant's own property, cannot be said to constitute the degree of necessity required, the mode of drainage adopted over the surface by a gutter, involving the adjoining property, ought not to be considered as a necessity when the same end can be attained by the complainant through his own lots at a trifling expense, and in a way not at all unusual in city property. It is preferable, and the law so considers it, that the ownership should be full and complete and untrammelled with implied burdens, and only when imperative necessity demands otherwise is

a different doctrine permitted to prevail.   Here the relative height of the yard and the gutter in Grantham streets admits of drainage by a pipe from six to twelve inches in diameter, at a cost of from $20 to $25.   Witnesses differ in their opinion as to which is the best mode for drainage, on or under the surface ; but the fact seems to be established, from the measurements taken, that a drain through the cellar, with reasonable fall, can be constructed on the complainant's own premises.    On the ground of necessity, the master does not deem the claim sustained.

"Let us then see whether it can be sustained on the plea of permanency.   As the owner of the entire property, Charles Stafford could not well have made any provision for taking away the water and do less than was done; it certainly was the least expensive mode he could adopt, and if it had been his proposed object to make a temporary arrangement and not a permanent one, he could scarcely have done otherwise than he did do.   If he had constructed under drainage, and by connecting pipes with the several houses, thereby manifested an intention to arrange for all the houses in a way not temporary merely, such drainage under the decisions might be deemed to be permanent in its character and pass with the land. But the manner of drainage used here was a perfectly natural one for the owner of the entire property to make a temporary provision, and for his own convenience, but not very likely to be adopted as a permanent arrangement for a divided estate.

"There are some general reasons why the easements claimed should not pass, for instance: The deed to Mr. Francies provides for an entire separation of his property from common use by Stafford, and it seems but reasonable that, without reservation, an entire separation of the two properties was intended.   It is not likely that, when the question of easements and servitudes was being provided for in the deed, entire silence would have occurred with reference to the complainant's claims, if they had been contemplated and intended as part of the grant.

"Again, the mortgage to Mr. Shannon antedates the deed to Mr. Francies several years, and the sale by the sheriff would pass the title held at the date of the mortgage, and the mortgaged premises could not be encumbered or burdened in any way to the mortgagee's disadvantage unless by his consent, and that he has neither done by the terms of his release nor by parol agreement : but on the contrary he asserts that if any such claim had been intended or asserted as a right he would have refused to release at all.   The money paid and credited on the mortgage at the time of the release cannot be said to be more than a fair proportion of the mortgage-debt for the portion of ground released, and the payment furnishes no evidence that it was the intention to make better one portion of the ground at the cost of the other, for a consideration paid therefor.

[Francies's Appeal.]

"Again, the easements claimed are too many and affect too seriously the use and improvement of the property of the respondent, and are too important to the complainant to have been intended to be conferred by mere implication, or such as a vendee would be willing to purchase and pay for without their express mention in the deed.

"The view of the law taken by the master does not, in his opinion, conflict with the authorities cited by counsel.

"The authorities relied upon by the complainant are: Kieffer *v.* Imhoff, 2 Casey 438; Cannon *v.* Boyd, 23 P. F. Smith 179; Worne *v.* Marsh, 6 Phila. 33; The Church *v.* Voneida, 6 Id. 557; Fidelity Building Association *v.* Getty, 33 Leg. Int. 238; Phillips *v.* Phillips, 12 Wright 178; Lampman *v.* Milks, 21 N. Y. 505. Without entering into a discussion of all these cases, one that of Kieffer *v.* Imhoff may be considered as substantially giving the rulings in the other cases; the facts in each case may differ somewhat, but they all refer to controversies in reference to the use of the alleyway between or abutting on the separated houses or lots, or some other such manifest and permanent arrangement of the property.

"Kieffer *v.* Imhoff was a dispute by adjoining lot-holders in reference to the common use of an alley-way between two adjoining houses erected on these lots. In the opinion of the court, it is said that, ' upon a severance of the estate by alienation of part of it, the alienee becomes entitled to all continuous and apparent easements which have been used by the owner during the unity of the estate, and without which the enjoyment of the property could not be fully had. * * * It is true that mere casual acts, * * * which are neither manifest to the eye nor designed to be permanent, do not fix the quality of any portion of his estate, but it is otherwise where the arrangements and dispositions are permanent and manifest. * * * The buildings on each side had been manifestly arranged with reference to the privileges enjoyed in reference to the alley.'

" The court refers to a fact which would seem in the case reasonably to indicate the intention to confer the easement as a designed and permanent arrangement in that it is said ' that the right of way was expressly annexed to the Imhoff lot by deed in 1803, and afterwards recognised in 1878.'

" The case seems to establish the doctrine that easements, to pass by implication, must be ' continuous and apparent easements,' 'designed to be permanent,' 'without which the enjoyment of the several parts could not be fully had;' 'that the arrangements and dispositions must be permanent and manifest,' and holding that an alley-way between buildings is manifestly for common use by the two houses between which it is located; but I do not know that the doctrine has been applied to any less manifest or unquestioned design in arrangement.

" The authorities presented by the respondent, so far as they relate to the matter determined in those already cited, do not show any conflict in principle.

" Such, for instance, the case of Howell v. McCoy, 3 Rawle 256, to the effect that what is necessary passes, what is convenient does not; such the master understands to be the doctrine of all the cases that conveniences of use will not create easements. The other cases cited by the respondent, viz. : Collam v. Hocker, 1 Rawle 108 : Stuyvesant v. Woodruff, 1 Zabriskie 133 ; Johnston v. Jordon, 2 Metcalf 237, 238 ; Fetters v. Humphreys, 3 C. E. Gr. 260 ; Same v. Same, 4 Id. 472 ; Maynard v. Esher, 5 Harris 222, have reference to matters not questioned and need no special mention.

" The case of Adams's Appeal, 7 W. N. C. 86, cited by respondent, is the last case on the subject decided by the Supreme Court. By reference to the case it will be seen that while Kieffer v. Imhoff and Connor v. Boyd are mentioned and sustained, it was held ' that the easement claimed by the plaintiff as a permanent easement was evidently a mere temporary arrangement for the accommodation of tenants.' The facts show apparent necessity, design and arrangement of the parts, with a fenced way leading from a door in the house, and yet the court say under the cases recited this easement does not pass, and the bill of plaintiff was properly dismissed. This case indicates a disposition on the part of the Supreme Court not to extend the doctrine of Kieffer v. Imhoff, and similar cases, beyond the facts exhibited in that case, and to confine implied grants to instances of absolute necessity and unmistakable design in the arrangements of the parts as a permanent condition for the property, either as a whole or in divided parts.

" The respondent asks, as the master has intimated heretofore, that the bill be dismissed, ' because such a bill cannot be maintained until the rights asserted have been adjudicated at law,' and cites in support of the demand Rhea v. Forsyth, 1 Wright 503 ; King v. McCully, 2 Id. 76 ; Howell v. McCoy, 3 Rawle 256 ; Bentz v. Armstrong, 8 W. & S. 40 ; Scott v. Allender, 23 Pitts. Leg. Jour. 74. The doctrine established by these cases is, that ' the right should be clear to warrant a decree to be followed by injunction. * * * If doubtful this of itself would be sufficient reason to induce a chancellor to pause until the right be ascertained at law.' But in the present instance, the view taken by the master is that the material facts upon which the complainant bases his claims are not denied or controverted. The evidence showing that the dispute is not so much upon the facts as upon the conclusions of law therefrom.

" The master has therefore determined the case upon the facts not in doubt in his view, and accordingly in conformity with the

[Francies's Appeal.]

order of his appointment herewith reports the form of a decree to be made by the court in the premises."

Exceptions were filed to this report, which the court overruled, and dismissed the bill, from which decree this appeal was taken.

*J. M. Stoner* and *M. A. Woodward*, for appellant.—The evidence shows what the grantor said and intended in the arrangement and disposition of his property. The easements are as permanent and visible as any mentioned in the decisions or as by their nature they can be, and are as clearly for the accommodation of all parts of the property, and seriously affect its value, beneficial use and enjoyment, and beyond these evidences carrying such easements with the general conveyance of the land we have the deed conveying "the ways, watercourses, privileges, appurtenances;" &c.

*Malcolm Hay*, for appellee.—The court below rightly dismissed the bill, 1. Because taking the view of the case most favorable to plaintiff, the facts upon which he based his claims were in dispute, both by the pleadings and the testimony, and in such cases equity will not interfere: Rhea *v.* Forsyth, *supra ;* King *v.* McCully, *supra.* 2. Because, even if the facts alleged in plaintiff's bill as to the existence of means for surface drainage and of ways were conceded to be true, Shannon was a purchaser under his mortgage of 1872, took title at the subsequent sheriff's sale as of its date ; and would be unaffected by any subsequent disposition of the property by Stafford, except so far as he had consented thereto. 3. Because Francies is estopped by reason of the fact that before ·the making of the release in question Francies asked the defendant if the tenants could use the alley-way and the right was refused.

In Bentz *v.* Armstrong, 8 W. & S. 40, the law of this state is stated to be that "in cities the owner of each lot must drain it himself, either to rear or front, even if he should be compelled to carry it under or through his house or building." In Scott *v.* Allender, 6 Pitts. Leg. Jour. (N. S.) 74, a case relating to drainage of lots in Pittsburgh, the Court of Common Pleas of Allegheny county, following this case, held that "each party must take care of the water falling or arising on his property and keep it off the other." See also Rhea *v.* Forsyth, *supra ;* Adams's Appeal, *supra ;* Rennyson's Appeal, 13 Norris 147.

The judgment of the Supreme Court was entered, November 22d 1880, .

PER CURIAM.—We affirm this decree upon the remarkably clear and able opinion of the learned master in the court below.

Decree affirmed, and appeal dismissed at the costs of the appellant.