## Stackpole et al. v. Stackpole

*John H. Cartwright* and *Thomas G. Gregory*, for plaintiffs.

*John J. Pentz*, for defendant.

HIPPLE, P. J., November 22, 1947.—This matter comes on before the court upon a complaint and amendment thereto filed by plaintiffs under Rules 1061-1066 of the Pennsylvania Rules of Civil Procedure governing actions at law and is instituted to determine whether plaintiffs have any right, lien, title or interest in the lands hereinafter described. The pleadings consist of plaintiffs' complaint and preliminary objections filed thereto by defendant. At this stage of the

procedure, all of the allegations set forth in plaintiffs' complaint must be taken as true.

Plaintiffs are the children of Harry C. Stackpole, late of St. Marys Borough, Elk County, Pa., deceased, and trustees of the estate of Lyle Townsend and of Jude Stackpole under the terms of his last will and testament. J. Hall Stackpole, Lyle Townsend, Harrison C. Stackpole and Jude Stackpole are his children, Jude Stackpole being a child by adoption.

Defendant, Adelaide W. Stackpole, is the widow of Harry C. Stackpole, deceased, the stepmother of J. Hall Stackpole, Lyle Townsend and Harrison C. Stackpole, and the mother by adoption of Jude Stackpole.

By deed dated July 14, 1927, and recorded in Elk County, Pa., in Deed Book No. 89, at page 358, Charles P. Harvey and wife conveyed to Harry C. Stackpole a parcel of land situate on the northern side of Maurus Street in St. Marys Borough at the Western terminus of this street. This parcel comprised nine lots of ground particularly described in the deed, a copy of which is attached to plaintiffs' complaint as Exhibit A.

During the years 1927-1928 Mr. Stackpole constructed on this parcel of land a dwelling house, known as 728 Maurus Street, St. Marys, Pa., in which, as well as in the addition thereto, to which reference is hereafter made, he lived until his death. On August 3, 1929, the Benedictine Society leased to Mr. Stackpole a parcel of land containing 1.74 acres, adjoining on the western side the land conveyed by Charles P. Harvey and wife to him. A copy of this lease is attached to plaintiff's complaint as Exhibit B. By its terms the lease was to be in effect for a period of 25 years from January 1, 1928, at a yearly rental of $25. It provided that any structure or improvement erected thereon, as well as all shrubbery, trees, etc., grown thereon should be delivered to lessor at the expiration of the lease, or a sooner determination thereof.

In 1930 Harry C. Stackpole and defendant, Adelaide W. Stackpole, became husband and wife, and while so married and occupying the residence of Mr. Stackpole on Maurus Street, Mr. Stackpole constructed in 1939 an addition to the dwelling house on the western side, which became an integral part thereof. This addition was constructed partly on the land conveyed to Mr. Stackpole by Charles P. Harvey and wife, and partly on the land leased to Mr. Stackpole by the Benedictine Society. That portion of the addition to the dwelling house which is located on land leased by Mr. Stackpole from the Benedictine Society is particularly described by courses and distances in the complaint and contains 212.8 square feet of land, more or less.

Subsequently by deed dated April 24, 1942, and recorded in Elk County, Pa., attached to the complaint as Exhibit C, the Benedictine Society conveyed to Harry C. Stackpole and defendant, husband and wife, as tenants by the entireties, for a consideration of $2,500, a parcel of land containing 7.8 acres. This deed provides (1) that the land so conveyed was to be used only for landscaping and gardening purposes, and (2) that the grantees and their children, excluding grandchildren, might erect dwelling houses for the use of themselves, their heirs and assigns. At the time this deed was executed and delivered to Mr. Stackpole and defendant, as tenants by the entireties, the addition previously constructed by Mr. Stackpole was upon a part of the land leased to Mr. Stackpole, and this deed includes that portion of the land leased by the society to Mr. Stackpole. The consideration of $2,500 was paid by Mr. Stackpole.

Mr. Stackpole died February 3, 1945, testate, his last will and testament being duly probated and recorded in the proper office in Elk County, Pa., a copy thereof being attached to plaintiffs' complaint as Exhibit D.

By his will Mr. Stackpole devised to his wife, Adelaide W. Stackpole, "my home situate at No. 728 Maurus Street, St. Marys, Pennsylvania, and all ground and buildings immediately surrounding said home." On or about February 7, 1946, defendant filed her election as his widow to take against the will, which election has been duly recorded in the recorder's office of Elk County, and filed with the clerk of the orphans' court.

By reason of this action of defendant and under the terms of the will of Mr. Stackpole, title to the real estate at 728 Maurus Street, St. Marys, P.a., and all grounds and buildings immediately surrounding said home which were within the power of Mr. Stackpole to devise became vested as follows: Adelaide W. Stackpole, one-third interest; J. Hall Stackpole, one-sixth interest; Harrison C. Stackpole, one-sixth interest; J. Hall Stackpole and St. Marys Trust Company, trustees of the Estate of Lyle Townsend, one-sixth interest, and J. Hall Stackpole and St. Marys Trust Company, trustees of the Estate of Jude Stackpole, one-sixth interest.

At the institution of this action and for sometime prior thereto the dwelling house and the addition which was constructed in 1939 were unoccupied. Plaintiffs allege that the use of the whole of the dwelling house of Mr. Stackpole, including all of the 1939 addition thereto, is necessary to the beneficial enjoyment of the land conveyed by Charles P. Harvey and wife to Mr. Stackpole, and that the encroachment of the dwelling house upon the land conveyed by the Benedictine Society to Mr. Stackpole and defendant as tenants by the entireties is slight.

Upon the death of Harry C. Stackpole, defendant as the surviving tenant by the entireties became the owner of the land conveyed by the Benedictine Society to Harry C. Stackpole and defendant as husband and wife.

Plaintiffs claim that under the above facts they are entitled to a decree that the land, or at least that part of it upon which the addition to the dwelling house was constructed in 1939, conveyed by the Benedictine Society to Mr. Stackpole and defendant is subject to a servitude in favor of the land conveyed by Charles P. Harvey and wife to Mr. Stackpole, and that this servitude consists of the right of the owner or owners of the land conveyed by Harvey to Stackpole to use and enjoy the dwelling house thereon including all of the 1939 addition thereto, so long as the same stands, together with the right to repair, maintain or remove the same at will.

In her preliminary objections, defendant alleges that the complaint, together with the exhibits thereto attached, does not show any right in plaintiffs to any servitude upon her land, that the servitude claimed by plaintiffs would in effect deprive defendant of the right to the use and possession thereof, that the complaint fails to show any rights or easements in plaintiffs enforcible in any action to quiet title, or any right to ask for relief under rule 1061, subsec. b, as enforcible against defendant and, further, that plaintiffs have a full, complete and adequate remedy in ejectment or in equity.

The question involved is, whether under the facts alleged in plaintiffs' complaint, plaintiffs are vested with a servitude or an easement on and over the land of defendant, and if so, whether it must be limited to the 212.8 square feet of land upon which the addition to the original dwelling was constructed.

At the argument and in the brief subsequently filed by him, counsel for defendant raised no question as to the propriety of bringing this action under Pa. R. C. P. 1061, nor was the question pressed that plaintiffs had an adequate remedy in ejectment or in equity. The Rules of Civil Procedure in actions to quiet title, in our opinion, are peculiarly applicable to a case of

this nature, and therefore we hold that the action is within rule 1061, and that plaintiffs do not have a full, complete and adequate remedy in ejectment or in equity. The very object of rule 1061, sec. b(2) is to determine any right, lien, title or interest in land and the sole purpose of this proceeding is to determine whether plaintiffs do have any right, lien, title or interest in the land conveyed by the Benedictine Society to Harry C. Stackpole and defendant and to what extent.

It will be noted that when Mr. and Mrs. Stackpole were married in 1930, the land upon which the addition to the original dwelling was built was then held by Mr. Stackpole only under the lease from the Benedictine Society, that Mrs. Stackpole had no interest therein except a possible future interest in the leasehold as the wife of Mr. Stackpole, contingent upon her surviving him, that the addition to the dwelling house was constructed in 1939, while the land was still held under the lease, that Mr. and Mrs. Stackpole lived in and occupied the dwelling house with the addition thereto as a whole until Mr. Stackpole's death in 1945, and that Mrs. Stackpole had no interest in the land upon which the addition was built until 1942, three years after its construction and then only as a tenant by the entireties and contingent upon her surviving Mr. Stackpole.

The Restatement of the Law of Property, Vol. 5, apparently treats an easement and a servitude as synonymous. It defines in section 455 the term "servient tenement" as signifying that the possessor of the land to which it is applied is subject to an easement and in section 456, that the term "dominant tenement" denotes that the possessor of the land to which it is applied has appurtenant thereto an easement over other land. In section 450, comment (a), an easement is defined as an interest which one person has in the

land of another, and the comment is made that its most important characteristic is that its burdens fall upon the possessor of the land with respect to which it constitutes an interest *regardless of the circumstances under which it was created.*

In a long line of cases which it is not necessary to cite, it is firmly established that no easement can exist so long as there is a unity of ownership, because an owner may at any time use or adapt portions of the whole according to his own desire. Easements are created, especially by implication, at the time a severance of unity of ownership occurs. By the sale of a portion of the land, easements and servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. An easement may be created by a direct grant or by implication. Thus upon a severance of two parts of a parcel of land held in unity ownership, the implication may arise that the possessor of one part is to have a certain use of the part not in his possession, the right of user thus arising constituting an easement.

The early case of Kieffer v. Imhof, 26 Pa. 438, which has been followed in Pennsylvania, establishes the doctrine that an easement to pass by implication must be continuous and apparent, designed to be permanent, without which the enjoyment of the several parts could not be fully had, and that the arrangements and dispositions must be permanent and manifest.

In Francies' Appeal, 96 Pa. 200-207, the doctrine is stated that easements are of two classes, viz., continuous, those of which the enjoyment is or may be continual, without the interference of man, as a running stream, a water spout, or the right to light and air; and discontinuous, such as can only be had by the interference of man, as rights of way, or a right to draw water; that, as a general rule, continuous easements pass, as implied grants by construction of law,

and discontinuous easements do not, and that all easements of whatever class which pass by implication or construction of law *must be necessary, apparent and permanent in their character;* and that no easements in one piece of land can be said to be appurtenant to another by reason of any use made of the two so long as they both belong to the same person. But privileges have been held to pass as incident to the same, and a correspondent burden imposed upon the other from the nature of the estate, the management of the parts of the estate, and the degree of necessity there is of giving such a construction to the conveyance, in order to give it a reasonable effect.

The facts alleged in plaintiffs' complaint are novel and neither counsel for the parties, nor the court, in its independent investigation, has been able to find any authority in Pennsylvania or elsewhere construing the question now presented.

Ordinarily, easements are created by implication when the owner of a tract of land conveys a part of it to another, the seller having imposed a burden of some nature upon the part remaining in the seller's possession, in which event the burden if apparent, permanent in its character and necessary for the enjoyment of the property sold remains as an easement upon the land remaining in the seller, and passes by implication to the buyer.

If Mr. Stackpole and defendant had sold to a third person the land conveyed to Stackpole by Harvey, describing it only as in the Harvey deed, but reciting "with the dwelling house and all improvements thereon", without including a specific description of the 212.8 square feet upon which the addition was partially built, the purchaser would undoubtedly be entitled to the use of the 212.8 square feet as an easement or servitude upon the remainder of the land purchased

from the Benedictine Society. With the knowledge of defendant a burden was imposed upon the land held by Mr. Stackpole and defendant as tenants by the entireties in that a part of the addition to the original dwelling house was constructed thereon. An easement in such case would be apparent, permanent and necessary to the enjoyment of the land conveyed and would be created by implication.

In this case, however, a further question arises. Upon Mr. Stackpole's death, by operation of law defendant became the owner in fee of the land conveyed to Mr. Stackpole and defendant as tenants by the entireties by the Benedictine Society, containing 7.8 acres. In addition defendant, under the terms of Mr. Stackpole's will, became the owner in fee simple of the land conveyed by Harvey and wife to Mr. Stackpole. There was therefore a unity of ownership in both pieces in defendant from February 3, 1945, the date of Mr. Stackpole's death until on or about February 7, 1946, when defendant, exercising her right under the law, elected as the widow to take against the will. The title to the land conveyed by Harvey and wife to Mr. Stackpole then became vested in different owners as above set forth, defendant being a co-owner with the children of Mr. Stackpole, her interest being an undivided one third.

No authority can be found as to the creation of an easement by a tenant in common and the restatement on page 3063 points out that the institute takes no position on the question as to whether the unity of ownership of an *undivided fractional interest,* such as that of a tenant in common, in either the dominant or servient tenement with ownership of *an interest* in the other tenement is subject to the rules there stated to be applicable in the case of the unity of nonfractional interests.

This comment, however, refers only to the creation of an easement by a co-owner having a fractional in-

terest *in both the dominant and servient tenements.* It does not apply to a situation where the severance of the unity of ownership results in vesting, by operation of law, of a fractional interest in the owner who as a result of the severance retains the fee simple title in an adjoining piece of land upon which a burden had been previously imposed.

But it will be observed that no severance of the unity of ownership occurred while defendant was a co-owner or tenant in common with plaintiffs in the land owned by Mr. Stackpole individually, and no easement, either by grant or implication was created by her *as a tenant in common or co-owner with plaintiffs.* The easement, if any, was created solely by defendant when she severed her unity of ownership in the two pieces of land by an election to take against the will of her husband. The fact that defendant by her voluntary act became *only a co-owner* in the Harvey land while retaining the fee in the adjoining piece does not change the situation as to the time when the severance actually occurred.

Defendant cites the case of Clements v. Sannuti et ux., 356 Pa. 63, in which the Supreme Court, as stated in the syllabus, held there can be no easement, no incorporeal right binding a servient tenement, the effect of which would be to deprive its owner of the right of use or possession, and that an easement cannot be an estate or interest in the land itself, or a right to any part of it, or a right which is inconsistent with a general property in the owner.

An examination of the bill in equity filed therein and the facts with reference to the severance of the unity of possession of the lots there involved raises a clear distinction between the principles held to apply in respect thereto and this present action.

The Clements case involved the right to the exclusive use and possession of a garage located partly on a lot owned by Sannuti and a lot owned by Clements.

The two lots in question were known as Lots 1346 and 1344, each with a width of 15 feet in front on Fifty-second Street and a depth of 85 feet on Master Street. These two lots, together with Lot 1342, were originally owned by one, Louis Clements, not connected with defendant. He erected a one-story brick garage at the intersection of Master Street and an alley in the rear. The garage covered an area of 225 square feet in the rear of Lot 1346 and 197½ square feet in the rear of Lot 1344. The only entrance to the garage was located on the portion thereof erected on Lot 1346, which faced Master Street, on which Lot 1346 abutted. The owner executed a mortgage on Lots 1344 and 1342, and thereafter conveyed the three lots to a building and loan association, subject to the mortgage on Lots 1342 and 1344. Subsequently the mortgagee having acquired title to Lots 1342 and 1344 through foreclosure, conveyed Lot 1344 to Sannuti and thereafter the building and loan association conveyed Lot 1346 to Clements. The bill in equity filed in the case alleged that defendant, Sannuti, threatened to physically remove the portion of the garage on Lot 1344, and asked for an injunction restraining defendant from tearing down or destroying any portion thereof on Lot 1344, from in anywise directly or indirectly interfering with *the full and complete use* by plaintiff of the garage, from trespassing upon or otherwise entering upon the garage premises, and from erecting any wall within the garage premises so as to interfere with *the full use thereof* by plaintiff. The bill did not aver that the use of the *whole garage* was necessary to the beneficial enjoyment of plaintiff's lot and plaintiff conceded that the right to use the portion of the garage on her premises was not claimed *as a necessity*. The court below held there was an implied easement and that the use of the rear portion of the garage on defendant's property was necessary to the convenient enjoyment of the whole garage itself, the front portion

and the entrance to which were on plaintiff's property, and held that plaintiff was entitled to the continued use of the garage to its full depth and to a decree enjoining defendants from trespassing upon, or in any manner interfering with the use by plaintiff, Clements, of the *entire garage* built by the common predecessor in title upon the two lots. Upon these facts the Supreme Court held there was no implied easement. There was no mention made in the mortgage of the right of the owner of Lot 1344 to use the garage, nor was there any provision therein excluding the garage from the effect of the mortgage, nor was the case, as stated by the Supreme Court, one where there was a slight encroachment of a building upon or near the dividing line. The mortgage, after describing the lots, contained the provision "with the buildings and improvements thereon erected" and there was no reservation of the portion of the garage standing upon the mortgaged premises. The Supreme Court stated that if such had been the intention of the parties, language would have been used making such intention plain.

In this case, according to the pleadings, plaintiffs do not claim the ownership of the 7.8 acres conveyed to Mr. Stackpole and defendant, but they do allege that the use of the whole of the dwelling house of Mr. Stackpole including the 1939 addition thereto is necessary to the beneficial enjoyment of the land owned by Mr. Stackpole individually, and that the encroachment of the dwelling house upon the land conveyed by the Benedictine Society to Mr. Stackpole and defendant containing 212.8 square feet of ground is a slight encroachment.

It can hardly be contended that a burden imposed on 212.8 square feet as alleged in plaintiffs' complaint out of a piece of land containing 7.8 acres, or 339,768 square feet, can be held to be other than a slight encroachment upon the whole.

From the pleadings it is clear that Mr. and Mrs. Stackpole were living in the original dwelling house in 1939 when the addition was constructed, becoming an integral part thereof, and that they continued to occupy this home and the addition thereto from 1939 to 1945 when Mr. Stackpole died, a period of approximately six years. Therefore, defendant, even though she became the owner in fee of the piece of land containing 7.8 acres, including the smaller parcel upon which the addition was erected, knew at the time she filed her election to take against her husband's will that the addition had been constructed, had been used by Mr. Stackpole and herself, and was an integral part of the dwelling house.

Did she then by her election cause a severance in her unity of ownership in the two pieces so as to create an easement by implication, even though she remained a tenant in common with plaintiffs of the land owned by Mr. Stackpole individually? In our judgment this question must be answered in the affirmative. The equities are all in favor of plaintiffs. We come to this conclusion notwithstanding the Clements case, which, after a careful reading of the record in the lower court and the paper books filed with the Supreme Court, appears to be clearly distinguishable. Defendant by her affirmative act of electing to take against her husband's will created a severance in the land owned by her in fee, with full knowledge that the addition to the dwelling house was partly upon land the title to which remained in her in fee simple.

In Becker v. Rittenhouse, 297 Pa. 317, it was held that " 'three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate: first, a separation of the title; [which as we have held occurred when Defendant elected to take against her husband's Will] ; second, that, before the separation takes place, the use, which gives rise to the easement, shall have been

so long continued and so obvious or manifest as to show that it was meant to be permanent: [this is alleged in plaintiff's complaint]; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained.'" (This is alleged in plaintiffs' complaint.)

Among the various determining factors set forth in A. L. I. Restatement of the Law of Property, §476, as to whether an easement has been created by implication are (1) whether claimant is the conveyor or conveyee; (2) the extent of necessity of the easement to claimant; (3) the manner in which the land was used prior to its conveyance, and (4) the extent to which the manner of prior use was or might have been known to the parties.

Plaintiffs' complaint does not allege the nature of the 1939 addition to the dwelling house, what its use was intended for, how it was used, or in what manner its use is necessary to the beneficial enjoyment of the property owned by Mr. Stackpole individually. These are all matters of proof, and the cause must therefore be heard in order that the parties may have an opportunity to present their evidence as to the matters of fact alleged in plaintiffs' complaint. The preliminary objections must be dismissed, defendant being given an opportunity to answer and the case set down for a prompt hearing.

Accordingly the following order is made:

### Order

And now, November 22, 1947, the preliminary objections filed by defendant to plaintiffs' complaint are hereby dismissed; the defendant is given permission to file her answer thereto within 20 days from this date, and the case is set for trial during the January 1948 term of court.