## Titus v. Poland Coal Co., Appellant.

*Mines and mining—Mining rights—Deed—Agreement of sale—Vendor and vendee—Option on coal.*

Where an owner of 167 acres of coal gives to another the option to purchase the same, and in the option there are enumerated certain mining rights and privileges, and subsequently, in pursuance of a parol modification of the option, the owner executes a deed for only 150 acres of the coal to the grantee with the same mining rights and privileges in the deed as were stated in the option, the grantee or his successor in the title, cannot claim, in the absence of fraud. accident or mistake, to exercise the mining rights and privileges mentioned in the option and deed, within the limits of the fifteen acres which were excluded from the deed.

Argued Oct. 7, 1918.   Appeal, No. 5, Oct. T., 1918, by defendant, from judgment of C. P. Greene Co., June T., 1915, No. 165, on verdict for plaintiff in case of Emra L. Titus   v.   Poland   Coal   Company.   Before STEWART, MOSCHZISKER, FRAZER, SIMPSON and FOX, JJ.   Affirmed.

Ejectment for land in Monongahela Township, Before RAY, P. J.

At the trial the jury returned a verdict for defendant. On a motion for judgment n. o. v., RAY, P. J., filed the following opinion:

This is an action of ejectment.   On the trial the court refused the defendant's, and affirmed the plaintiff's, request for binding instructions, and directed the jury to return a verdict in favor of the plaintiff for the premises described in the writ together with damages and costs, which was accordingly done.   The matter is now before the court on a motion of the defendant for judgment non obstante veredicto upon the whole record, as provided by the Act of Assembly, approved April 22, 1905, P. L. 286.

It is not disputed that title to the land in question was in Emra L. Titus, the plaintiff. On April 20, 1898, the said Emra L. Titus, entered into an optional agreement with one John C. Neff, wherein, on certain express terms and conditions, he agrees to sell to the said John C. Neff all the nine-foot vein of coal in and underlying a certain described tract of land, situate in Monongahela Township, Greene County, Pennsylvania, and which said tract of land includes the land now in controversy. This agreement was recorded August 23, 1899, in the office of the recorder of deeds of the said county, in deed book 67, page 87.

By this agreement the said Emra L. Titus "covenants, promises, grants, bargains and sells to the party of the second part, his heirs and assigns, as follows, to wit: sole, irrevocable, and exclusive right, privilege and option to purchase and take at any time within three months from date hereof, all the nine-foot vein of coal, all coal with a nominal covering of twenty feet to be accepted, in and underlying all that certain tract of land in the seisin of the said first party, situate in Monongahela Township, Greene County, Pennsylvania, bounded as follows: on the north by lands of S. R. Provins, E. S. Evans, N. A. Rumble et al.; on the south by lands of Silas Ross and William K. Mapel's heirs; and the east by lands of Asa Sterling; on the west by lands of William Gapen, A. G. and E. N. Titus; and containing one hundred and sixty-seven acres, more or less, at the rate and for the sum or price of one hundred dollars for each and every acre thereof, to be paid at the time and in the manner hereafter mentioned.

"Also, that the said first party shall and will, within thirty days after notice in writing that said second party elects to purchase said coal upon the terms herein mentioned, at his proper costs and charges, make, execute and deliver to the said second party, his heirs and assigns, a good and sufficient deed or deeds for said coal, in fee simple; and with the free and uninterrupted right-

of-way into and under said land at such points and in such manner as may be necessary and proper for the purpose of ventilating, draining, digging, operating and carrying away said coal, or other coal or coke, without any liability for damages that may arise from the removal of any or all of said coal, or the manufacture of coke, without being required to provide for the support of the overlying strata or surface, or without being liable to any injury to the same or anything therein or thereon, or to the springs or water courses thereon; also with the right to mine, remove and carry away through said tract of land any other adjoining coal, coke or supplies now or hereafter belonging to said second party, his heirs and assigns; also to have the right to purchase and take at any time as much of the surface of said tract of land as may be necessary for the ventilation of said coal at a price not exceeding one hundred and fifty dollars per acre."

This is followed by a covenant on the part of the second party to the agreement, which reads: "In consideration whereof the said second party hereby covenants, promises and agrees to pay or cause to be paid unto the said first party for said coal, if so purchased as aforesaid, at the rate of one hundred dollars per acre for each and every acre of the nine-foot vein of coal in said above described tract, as the same may be determined by the engineer of the said second party, his heirs and assigns, etc."

The optional period of three months within which the party of the second part was to signify his acceptance of the said nine-foot vein of coal, was continued by the party of the first part until June 1, 1899, and again continued, on June 2, 1899, for a period of thirty days from that date. Prior to the expiration of the last continuance, and on June 22, 1899, the said Emra L. Titus accepted notice of the acceptance of the said option and contract of sale by the said John C. Neff, and five other persons—J. V. Thompson, Fuller Hoggsett, J. P. Brennen, W. H. Play-

ford and C. H. Seaton—whom he had associated with himself in the purchase.

By deed of general warranty, dated March 20, 1901, and recorded May 6, 1910, in the office of the recorder of deeds for Greene County, Pennsylvania, in Deed Book, Vol. 119, page 461, the said Emra L. Titus and Elizabeth J. Titus, his wife, conveyed to the said John C. Neff and his several associates, all the nine-foot or river vein of coal in and underlying a certain tract of land situate in Monongahela Township, Greene County, Pennsylvania. In this deed the parties of the first part covenant that "they have granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, convey and confirm unto the said parties of the second part, their heirs and assigns, all the nine-foot or river vein of coal in and underlying all that certain tract of land situate in Monongahela Township, Greene County, Pennsylvania, etc." This is followed by a description of the said tract of land by courses and distances, as well as by adjoiners, and "containing one hundred and fifty and six hundred and seventy-nine-thousandths (150.679) acres." This again is followed by the grant of the same mining rights and surface privileges set out in the said optional agreement, and hereinbefore quoted in full.

The several grantees in this deed—Thompson and Brennen excepted—by deed dated March 6, 1913, recorded March 31, 1913, in Deed Book 143, page 214, conveyed their respective interests in the said nine-foot or river vein of coal to the said Josiah V. Thompson. By deed dated July 27, 1912, recorded August 23, 1912, in Deed Book, Vol. 224, page 58, the said Josiah V. Thompson and wife, and John P. Brennen and wife, and others, conveyed to Poland Coal Company, a corporation, the defendant in this action, several tracts of coal, aggregating approximately eleven hundred acres. Among the tracts so conveyed to Poland Coal Company

was the Titus tract, as conveyed by Titus and wife to Neff and his associates.

It will be observed that although the optional agreement calls for one hundred and sixty-seven acres, more or less, the three several deeds offered in evidence already referred to—the deed from Titus to Neff and associates, the deed from certain of the grantees in the first deed to others of the grantees therein, and the deed from Thompson and Brennen and others, to Poland Coal Company—each calls for one hundred and fifty and six hundred and seventy-nine-thousandths acres. The discrepancy amounts to about fifteen and two hundred and seventy-five-thousandths acres, which is the land in dispute in this case, and the right of possession and title to which the plaintiff alleges is in him and not in the defendant company. The whole of the tract of land, as described in the optional agreement, is underlaid with the Freeport vein of coal and is underlaid in part by the nine-foot and Mapletown veins, the two latter outcropping on this land. All these veins of coal are valuable, and all merchantable and marketable.

The Poland Coal Company, the defendant, is a private business corporation. It was incorporated July 22, 1912, under the laws of this State. By virtue of a deed of July 27, 1912, the Poland Coal Company became the owner, not only of approximately eleven hundred acres of the nine-foot vein of coal, including the coal in question, but also of certain tracts of surface land, among them the farm known as the Mary A. Mapel farm, and another known as the Silas R. Provins farm, the two containing some one hundred and sixty acres. These two farms adjoin the Monongahela river, a navigable stream, and Dunkard creek and the Titus land, and all of which are traversed by public roads and highways.

The Poland Coal Company, October 30, 1912, under the Act of June 9, 1911, P. L. 756, Article XIII, Sections 1 and 4, presented its petition to the Court of Quarter Sessions of Greene County, setting up, among other

things, its corporate existence and the ownership of a large amount of the Pittsburgh vein of coal; that it had caused surveys to be made of this coal to ascertain at what points and in what manner it would be practicable or feasible to operate the same; that mining operations and the construction of mine equipment had not been begun, but were contemplated; that it was not practical to operate this coal, to drain or ventilate the mines of the same by means of openings upon its own land, but that it was practicable to mine and operate said coal, and to drain and ventilate said mines, and to construct ways of ingress and egress by means of openings on lands of the defendant; that it had located the necessary openings, etc., on lands of the defendant; that it was necessary that the said company should have on defendant's lands a main entry, a manway or traveling way, an air way and other things fully described in the petition. It also further set forth in the said petition that it was necessary to provide on the surface of the lands of the defendant a water course or right-of-way, and a right-of-way, partly under and partly over the surface, as a tramway from the proposed mine openings to the point where Poland Coal Company had located its contemplated plant for the manufacture of coke. This petition concluded with the prayer that the land be condemned and the court appointed a board of viewers for that purpose, and to assess any damages accruing by reason thereof to the defendant. Accordingly, on November 11, 1912, the said court appointed a board of viewers in accordance with the prayer of the petitioner. The said viewers, on January 31, 1913, filed their report, condemning the said property, to which report the defendant filed exceptions. The Poland Coal Company, the defendant, on February 24, 1913, presented its petition to the said Court of Quarter Sessions wherein it set forth its desire to exercise the privileges granted, to appropriate the lands, make the openings and construct the several ways

provided for at once, and at the same time it presented its bond in the sum of three thousand dollars to secure any damage that might accrue to the plaintiff. To this bond exceptions were filed. May 26, 1913, the said court entered a final decree dismissing all the exceptions and confirming the report of the viewers. Following this, on June 7, 1913, the said Emra L. Titus appealed the matter to the Superior Court, which court, after hearing arguments, reversed the court below and dismissed the petition: Poland Coal Company's Case, 58 Pa. Superior Ct. 312.

In pursuance of the said proceedings in the Court of Quarter Sessions the defendant entered upon and took possession of the land in dispute. This land consists, for the most part of a steep, precipitous hillside or bluff, very rocky and covered with trees and bushes. Without any agreement with the plaintiff, and contrary to his wishes, the defendant company took possession of this property. It erected thereon, along the face of the bluff, for a distance of one thousand feet, or more, a tramway to convey coal from the mine openings to its coke ovens. It also erected on this land a fan house, two small buildings, machinery necessary to remove the coal not only from the Titus tract but also from other tracts adjoining it, owned by the company. It also made three new, and enlarged two, old openings through the outcrop coal on the disputed land in order to reach and be able to mine the coal within the boundaries of the Titus deed, and from adjoining tracts. These several entries, from the points of entering the hillside to the line called for in the Titus deed to Neff and his associates, are of an average length of about forty-three feet and an average width of seven or eight feet.

The foregoing is a statement of the material facts in this case as developed by the evidence on the trial. At the close of the testimony it was agreed by counsel for both parties that the only questions for determination, under the evidence, were questions of law, and that the

court should direct the verdict of the jury. This was accordingly done in favor of the plaintiff, as heretofore stated.

The defendant company, in support of its motion for judgment non obstante veredicto, relies principally upon two legal propositions: (1) that the mining and surface rights and privileges granted in the deed attach not only to the 150.679 acres of land described therein, but also to the entire 167 acres, more or less, described in the optional agreement—or, in other words, defendant's contention is that the article of agreement, in so far as it relates to mining rights and privileges should be read into, and is a part of the deed; (2) that it is entitled to a right-of-way through the land in dispute as "a way of necessity."

After an examination of the authorities relied on by the defendant company in support of these two propositions the court finds itself unable to assent to either one. It must be admitted that the deed, standing alone, secures to the grantees therein no mining rights and privileges attaching to any other lands than those described in the deed itself. There is nothing whatever in the deed showing the grantor owned any adjoining land or any other land anywhere. It follows, therefore, that if the defendant company's mining rights and privileges attach to the land in dispute they must so attach through and by virtue of the optional agreement which covers the said land. Had it been shown that in the making of the deed there was either fraud, accident or mistake, a different proposition would have been presented; but nothing of the kind has been alleged.

By the optional agreement the plaintiff covenanted to sell "all the nine-foot vein of coal, all coal with a nominal covering of twenty feet to be accepted, in and underlying all that certain tract of land" which was described by adjoiners "and containing 167 acres, more or less, at the rate and for the sum of one hundred dollars per acre, for each and every acre thereof." Under this contract

the minimum amount of coal that could be accepted was fixed by the stipulation "all coal with a nominal covering of twenty feet to be accepted." But did this agreement fix the maximum acreage that must be accepted? We think not. Was not the maximum acreage to be accepted left to the choice and election of the second party to the contract? The contract provides: "In consideration whereof the said second party hereby covenants, promises and agrees to pay, or cause to be paid unto the said first party for said coal, if so purchased as aforesaid, at the rate of one hundred dollars per acre for each and every acre of the nine-foot vein of coal in said above-described tract, as the same may be determined by the engineer of said second party." In pursuance of this provision we see no reason why the second party could not have elected to accept any number of acres of coal, not less than the number "with a nominal covering of not less than twenty feet"; or why he might not have elected to take any larger number of acres, to the inclusion of every acre within the description of the optional agreement. He did elect, however, to take only the 150.679 acres embraced in the deed. Having thus exercised his choice and election, in the absence of any allegation of either fraud, accident or mistake, and with no evident misconception of the deed by either party, neither he nor his successor in title, the present defendant, can now be heard, in our opinion, to complain of his own voluntary act. He might have included in the survey, which was to be, and as the evidence shows was, made by his own engineer, all the coal to a line below the line of outcrop—as well as two additional acres lying across a deep ravine—but he has not seen fit to do so. The optional agreement clearly gave him that right, but he failed to exercise it. By his election not to include in the survey the two acres of coal lying "across the ravine" he did not even take the minimum amount—"all the coal with a nominal covering of twenty feet"—in accordance with the terms of the option. As we view it, therefore,

all the mining rights and privileges to which the defendant company is entitled are set out in the deed under which it holds, and attach to the land therein described, and to no other lands.

It is said in 13 Cyc. 616, "As a general rule a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior purposes, stipulations and oral agreements, all collateral promises including promises made contemporaneously with the execution of the deed." In support of these several propositions the following Pennsylvania cases are cited: Harbold v. Kuster, 44 Pa. 392; Shontz v. Brown, 27 Pa. 123; Jones v. Wood, 16 Pa. 25; Colvin v. Schell, 1 Grant 226; Cronister v. Cronister, 1 W. & S. 442; Creigh v. Beelin, 1 W. & S. 83; Haggarty v. Fagan, 2 P. & W. 533; Kennan v. Doughman, 1 P. & W. 417; Seitzinger v. Weaver, 1 Rawle 377; Crotzer v. Russell, 9 S. & R. 78; Thomas v. Henderson, 4 Kulp 390; In re Pittston Road, 4 Kulp 305.

We cite these authorities also in support of the conclusion reached. The deed in the case at bar, as we gather from all the facts before us, was intended by the parties thereto to merge every provision of the optional agreement intended to be binding upon the parties or either of them. By the deed, prepared by the grantees themselves, the grantor yielded his right under the option to require the inclusion of the two acres of coal "beyond the ravine," and the grantees yielded their rights to any mining rights and privileges, save such as attach to the property included with the lines of their deed. It has been held that the question of merger is one of construction, to be gathered from a consideration of the entire contents of the instruments, and the intention of the parties thereto. Where, in the making, execution and delivery of a deed for land, no fraud has been committed by either party, and no intent on the part of either party

thereto that it should either include or exclude any grant or privilege not therein contained, and it is free from uncertainty or ambiguity—as we hold this deed is—then, in that event, the deed must be its own interpreter.

The plaintiff when on the stand on the trial of this case was asked: "Mr. Titus, how many acres of land embraced in the option?" "One hundred and sixty-eight and a fraction." "How many acres is embraced in the deed you made to John C. Neff, and others, for the coal?" "One hundred and fifty acres and a fraction." "Why is it that all the land embraced in the option is not embraced in the deed?" "Well, they elected not to take but 150 acres."......"Mr. Howell has asked you about their electing not to take the outcrop coal. Was there other coal they elected not to take, and if so how much?" "About two acres." "And where is that with reference to the 150 acres?" "It lays across a deep ravine—they decided not to take that." This evidence, which is undisputed, throws some light, at least on the understanding and intent of the parties, and discloses a mutual yielding of their respective rights under the option. It is evidence of a different agreement from the one contained in the option, of an agreement whose terms and conditions were embraced in the deed.

We are by no means unmindful of the fact, however, that in many cases the appellate courts of this State have held that a deed is not always a merger of articles of agreement for the sale of lands, and that in many cases it is to be considered as a part performance only of the stipulations of the agreement. It was so held in Selden v. Williams, 9 Watts 9, and in Lehman v. Paxton, 7 Pa. Superior Ct. 259. It has also been held that a deed is not a merger where there is a deed and also a second one, between the same parties, for the same estate, Kenrick v. Smick, 7 W. & S. 41; or where the owner by oral agreement assumes obligations collateral to the conveyance of title, Stewart v. Trimble, 15 Pa. Superior Ct. 513; or where there is a recorded contract for the sale of

land and also for coal beneath the surface of an adjoining tract by an equitable owner, Lulay v. Barnes, 172 Pa. 331; or where the agreement is to refund the purchase money if the title fails, and the deed contains no warranty of title, Close v. Zell, 141 Pa. 390, and in many other instances.

The defendant company in support of their contention relies on Selden v. Williams, supra; Close v. Zell, supra; Warfel v. Knott, 128 Pa. 528; Lehman v. Paxton, 7 Pa. Superior Ct. 259; McGowan v. Bailey, 146 Pa. 572, and others. But none of these cases, in our opinion, rule the case at bar. The defendant company relies with great confidence upon the case of McGowan v. Bailey, supra, referring to it in the oral argument and citing it at length in its brief. While some of the facts of that case are like the facts of the case at bar, they are not parallel cases......

In the case at bar exactly the same mining rights provided for in the option are included in the deed, but they are very unlike the mining rights in McGowan v. Bailey. They are so unlike, in fact, as will be seen by a comparison of them, that the one case can scarcely be regarded as ruling the other. In McGowan v. Bailey the deed was made in pursuance of the contract, but, by mistake, or otherwise, the mining rights were entirely omitted from it. In the present case it cannot be said that the deed was made in pursuance of the written optional agreement. The facts show, as heretofore stated, that both parties to the agreement mutually surrendered certain of their rights therein, thereby to that extent making a new agreement, all the terms of which, by common consent, were merged in the deed.]

In view of the conclusion reached as to the defendant company's first proposition, it is unnecessary to consider at length its second proposition—"a way of necessity." A way of access to the coal is provided by the deed. In the case of Bascom v. Cannon, 158 Pa. 225, the second paragraph of the syllabus reads:

"Where parties have agreed upon the mode of access to coal conveyed, no implication can be allowed of any other way, however convenient."

It must be admitted that the way constructed over the land in dispute by the defendant company, is, perhaps, the best, easiest and most convenient way possible for the removal of the coal from the Titus tract. The defendant, however, having a way of access to the coal by grant in its deed, and the evidence showing that, although it may be very expensive to do so, the coal can be mined on the surface of the Titus land embraced in defendant's deed, by shaft or slope, and that the defendant is the owner of surface lands adjoining the Titus tract, "the way of necessity" doctrine is not, in our opinion, applicable to this case. Among the cases relied upon in support of this conclusion are the following: Bascom v. Cannon, supra; Com. v. Burford, 225 Pa. 93; Ogden v. Grove, 38 Pa. 487; McDonald v. Lindall, 3 Rawle 492; Weber v. Vogel, 159 Pa. 235; Funk v. Haldeman, 53 Pa. 229; Grubb v. Guilford, 4 Watts 223.

And now, September 24, 1917, this matter having come on to be heard, and having been argued by counsel, after due consideration, it is ordered, adjudged and decreed, that the motion of defendant company for judgment non obstante veredicto be overruled and dismissed at the costs of the defendant; and it is further ordered, adjudged and decreed that judgment be entered on the verdict of the jury, on payment of the jury fee.

*Error assigned* was in overruling motion of defendant for judgment n. o. v.

*George D. Howell,* with him *Crago & Montgomery,* for appellant.

*James J. Purman,* with him *James A. Garrison* and *Edward Martin,* for appellee.

PER CURIAM, January 4, 1919:

· In the opinion filed by the learned president judge discharging the rule for judgment non obstante, the question raised by this 'appeal was carefully considered and correctly adjudged. Nothing can profitably be added to what is there said.

The judgment is accordingly affirmed on the opinion.