## Deffenbaugh *v.* Hess, Appellant.

*Husband and wife—Tenant by curtesy—Mines and mining.*

While a tenant by the curtesy has no right to open and mine coal
from the lands which he holds for life, where such land was unopened
and unmined at the time of the death of the wife, still as the coal in
place is land he has a life estate in it, although it may be valueless to
him, and with this estate the remainder-man cannot interfere; but if
the remainder-man and the tenant by the curtesy join in a deed and sell
all their interest in the land as a whole, the money proceeds thereof
take the place of the land, and the tenant by the curtesy is entitled
to the whole income therefrom, during his life; and this rule applies
as to the coal even where the tenant by the curtesy and the remainder-
man have by one deed sold the surface and by a later deed have sold
the coal in place.

Argued May 11, 1909. Appeal, No. 148, Jan. T., 1909, by
defendant, from judgment of C. P. Fayette Co., June T., 1908,
No. 597, for plaintiff on case stated in suit of Henry J. Deffen-
baugh v. John Ellsworth Hess, Guardian of Margery E. Deffen-
baugh, a minor. Before MITCHELL, C. J., FELL, BROWN, POT-
TER and ELKIN, JJ. Affirmed.

Case stated to determine ownership of income derived from
the proceeds of the sale of coal in place. Before VAN SWEAR-
INGEN, J.

The court entered judgment for plaintiff on case stated.

*Error assigned* was the judgment of the court.

*W. J. Sturgis,* with him *Geo. D. Howell* and *S. John Morrow,*
for appellant.—Unopened mines are not the subject of dower
or curtesy, nor can any life tenant liable to impeachment for
waste, have any interest in them: Neel v. Neel, 19 Pa. 323;
Irwin v. Covode, 24 Pa. 162; Kier v. Peterson, 41 Pa. 357;
Westmoreland Coal Co.'s App., 85 Pa. 344; Stoughton v.
Leigh, 1 Taunt. 402; Coates v. Cheever, 1 Cow. 460; Living-
ston v. Reynolds, 2 Hill, 157; Marshall v. Mellon, 179 Pa. 371;

Williams' Case, 3 Bland Ch. (Md.) 186; Buckley v. Collins, 8 Luzerne Leg. Reg. 77.

If, as all authorities hold, a life tenant has no interest in an unopened mine which has any present value, a sale of such unopened mine under an act designed to give all parties the value of their interests, ought not to create a value where none before existed: Bond v. Godsey, 99 Va.: 564 (39 S. E. Repr. 216); Datesman's App., 127 Pa. 348; Dennison's App., 1 Pa. 201; Shippen & Robbins's App., 80 Pa. 391; Henderson v. Henderson, 4 Pa. Dist. Rep. 688.

*D. M. Hertzog,* for appellee.—The only reason why a life tenant is not entitled to open and work unopened mines is because such operation would necessarily cause waste to the owner of the fee in remainder: Neel v. Neel, 19 Pa. 323; Eley's App., 103 Pa. 300.

In Alderson v. Alderson, 46 W. Va. 242 (33 S. E. Repr. 228), coal was leased upon royalties by a wife in her lifetime and she died intestate. It was there held that the surviving husband was entitled to his curtesy in the proceeds "although no coal mine is opened on said land at the time of her death," but was afterwards opened during the lifetime of the husband. See also Koen v. Bartlett, 41 W. Va. 559 (23 S. E. Repr. 664); Wentz's App., 106 Pa. 301; McClintock v. Dana, 106 Pa. 386; Shoemaker's App., 106 Pa. 393.

Where the life estate becomes productive by the joint act or consent of the life tenant and the remainder-man, there cannot be waste, in its legal sense, to the remainder-man because of his assent thereto: Priddy v. Griffith, 37 N. E. Repr. 999; Seager v. McCabe, 92 Mich. 186 (52 N. W. Repr. 299).

OPINION BY MR. JUSTICE BROWN, October 11, 1909:

John A. Moss died January 18, 1888, intestate, seised in fee of 86.41 acres of land underlaid with coal. He left surviving him a widow, Mary A. Moss, and two daughters, Jennie and Margery E., the latter married to Henry E. Deffenbaugh, the appellee. Mrs. Deffenbaugh died March 8, 1897, intestate, seised, subject to the widow's dower, of an undivided half in-

terest in the real estate which had descended to her from her father. The case stated admits this seisin. Her mother, her husband and one daughter, for whom the appellant is guardian, survived her. On July 17, 1899, Jennie Moss conveyed her one-half interest in the coal vein under the said land, excepting one acre, to Charles H. Foote, and in 1901 she, Mary A. Moss, as widow, the appellant as guardian, and the appellee conveyed the surface of the said farm, together with one acre of coal, to George C. Moore, reserving the one-half interest that had belonged to Mrs. Deffenbaugh in the vein of coal underlying 85.41 acres. On March 28, 1906, the orphans' court of Fayette county authorized and confirmed a sale by the appellant, as guardian, of his ward's undivided one-half of the said 85.41 acres of coal, with mining rights, to James R. Cray for $42,705, the appellee joining in the conveyance under the following stipulation:

"March 26, 1906, H. J. Deffenbaugh will join in petition to court and in deed on condition that net income will be paid to him for life if the court on proper application so orders, otherwise income to be held for minor children.

"H. J. DEFFENBAUGH,    [SEAL]
"JOHN E. HESS,           [SEAL]."

The appellant and appellee executed a deed to Cray for the said coal land on April 2, 1906, and the purchase money having been paid to the guardian and invested by him, the question before the court below and on this appeal is whether the net income arising from two-thirds of the said sum is to be paid to the appellee for life as tenant by the curtesy. The vein of coal which was conveyed to Cray was, at the time of the death of appellee's wife, and continued to be up to the time of the sale, "unopened, unmined and undeveloped."

Upon the death of Margery E. Deffenbaugh her surviving husband became tenant by the curtesy of two-thirds of her undivided interest in the real estate which had descended to her from her father. If her mother had died before her, she would have been seised at the time of her death of an entire half in the real estate, and the appellee's interest as tenant by

the curtesy would, upon her death, have been a life estate in that interest. The life estate which vested in him was in all the land of which she was seised at the time of her death, and included not only the surface, but all that was beneath it, and his right to the use of the same was absolute as to the remainder-man so long as he committed no waste working lasting injury to the inheritance. His right was to occupy and cultivate the surface without the consent of the remainder-man, because the use and cultivation of it worked no injury to the inheritance, and when he, together with the guardian, sold the surface, he became entitled to the interest arising from two-thirds of the proceeds. This is not disputed. If nothing more had been done, nothing more as income from the land would have come to him as tenant by the curtesy, for what remained of value was nothing but the vein of coal. This, at the time of his wife's death, was unopened, unmined and undeveloped, and remained so at the time of the sale to Cray. That the appellee had no right to open and mine it is conceded, but such concession is not an admission that he did not have a life estate in it, even though it was, and continued to be, valueless to him until opened or sold by the owner of the fee with his consent, coupled with a reservation of his rights. It constituted a part of the land of which his wife had died seised, for coal in place is land, and his common-law right was, therefore, a life estate in it. To every part of the land of which she was seised, whether above or beneath the surface, and over which her dominion extended, he became entitled for life upon her death, and during his life there was no right in the remainder-man to enjoy any portion of it without his consent, even if he himself could derive no benefit from it. Tenancy by the curtesy means nothing less. The remainder-man was excluded from every portion of the land during the life tenancy. When, however, what had not been productive or profitable to either the life tenant or the remainder-man became so by an act of the latter, permitted by the former, the right of each continued to be the same in the portion of the land made productive and profitable. When the vein was sold the purchase money took its place as land, and the interest

of the life tenant followed it in its changed form, from which, without committing waste, he could derive enjoyment. Such enjoyment will not impair the vested right of the remainder-man, and upon the death of the life tenant the money will pass undiminished to the former, just as the land, if not sold, would have passed uninjured by waste. It was upon this correct theory that the learned court below based its judgment, and we concur with it in the view that Stoughton v. Leigh, 1 Taunt. 402, and Bond v. Godsey, 99 Va. 564, the cases mainly relied upon by the appellant, are not in accord with the authorities, and certainly not with reason.

It has been held that the widow of an intestate is dowable of mines unopened at the time of her husband's death, if subsequently developed and opened by the owner of the fee, and there can be no difference in principle between dower right and that of tenancy by the curtesy, unless it be in favor of the latter. By the death of the owner of the fee dower is brought into existence, but tenancy by the curtesy, which is initiate during coverture, becomes consummate. In Lenfers et al. v. Henke et al., 73 Ill. 405, it was held, without regard to an alleged agreement between the widow and the remainder-man, that the widow was dowable of mines opened by the heir or owner of the fee after her right of dower had attached, the court saying: "The demandant's interest in these mines comes strictly within the definition of dower, and if she is to be barred of that right it must be upon some principle or for some reason known to the law. We have not been able to find any authority exactly in point, but the reasoning of the decisions on this question do tend to support the theory we are endeavoring to maintain, viz.: there is no reason why the wife may not be entitled to be endowed of mines opened by the heir or owner of the fee after the right of dower attaches, and before there has been any assignment, as well as in mines opened by the husband. . . . The heir, by opening the mines, has destroyed all other profits of the land. There is no mode of enjoying mines except by working them. If this cannot be done they are profitless to the dowress. As we have seen, it is not waste in her to work mines opened by her hus-

band, and, by a parity of reasoning, we reach the conclusion, it is not waste for her to work mines opened by the heir before assignment of dower. At all events, she would be entitled to dower in the profits in case the mines should be worked by the heir or owner of the fee, before assignment of dower." This was later approved by the same court in Priddy v. Griffith, 150 Ill. 560. The question before the court in Seager v. McCabe, 92 Mich. 186, was whether, under the statutory provisions of that state, giving the widow of a deceased person the use during her natural life of one-third of all the land whereof he was seised, she was entitled to dower rights in the royalties realized from a lease by the guardians of the minor heirs of the mineral lands which were undeveloped at the time of her husband's death and solely valuable for the minerals afterwards discovered therein, and it was held that she was. In Dickin v. Hamer, 1 Drew. & S. 284, the vice chancellor seemed to be of opinion that a widow, dowable of the real estate of her husband, not having done anything to preclude her, is entitled to one-third of the income of the proceeds arising from the royalties of mines opened after her husband's death. In Blakley et al. v. Marshall, 174 Pa. 425, the lessors in an oil lease were life tenants and remainder-men. No lease would have been taken from the life tenants, for they could have given none that would have permitted the lessee to remove the oil from the premises to the injury of the remainder-men. In holding that the life tenants were entitled to enjoy for life the fund arising from the lease, we said: "It was obviously necessary, as well as to the interest of both the tenants for life and the remainder-men, that they should thus unite in the lease, because no practical oil operator would undertake the development of supposed oil territory on the faith of a lease from life tenants only, and for the further and more important reason that, if not promptly developed and worked, the land would soon have been drained of its oil through wells on adjoining lands. . . . An oil lease, investing the lessee with the right to remove all the oil in place, in the premises, in consideration of his giving the lessors a certain per centum thereof, is in legal effect a sale of a portion of

the land and the proceeds represent the respective interests of the lessors in the premises. If there be life tenants and remainder-men, the former are entitled to the enjoyment of the fund (i. e., interest thereon) during life, and at the death of the survivor the corpus of the fund should go to the remainder-men. This is as nearly a just and equitable distribution as can be made. It is in accord with the conclusion reached by the learned president of the court below; and there appears to be no reason why the judgment should be either reversed or modified. We are all of opinion that it should be affirmed." The above reasoning applies with equal force to the case before us, and the judgment is affirmed.