Stein, Appellant, *v.* Bell Telephone Co.

Argued May 13, 1930.   Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Russell S. Machmer* and *J. Fred Schaffer,* with them *C. M. Clement,* for appellant.—It is a contention of the appellant that, previous to becoming the tenant of W. A. Riland in 1919, W. A. Riland had imposed upon the Center Street lot an equitable servitude or easement in the nature of a right of way over the lot to and from his livery stable to Center Street, so that, when he leased the brick building to Stein, the latter took by implication under the lease an easement of a right of way over the lot, notwithstanding the fact that nothing was said in the lease of the right of way and that the premises leased to Stein were described as being bounded by "lot of W. A. Riland"; and that thereafter Riland and his successors in title could not deny the use of the right of way over the lot to Stein: Grace M. E. Church v. Dobbins, 153 Pa. 294; Kieffer v. Imhoff, 26 Pa. 438; Nauman v. Box Co., 280 Pa. 97; Com. v. Burford, 225 Pa. 93; Liquid Carbonic Co. v. Wallace, 219 Pa. 457; Casey

v. Canning, 43 Pa. Superior Ct. 31; Wissler v. Hershey, 23 Pa. 333; Com. v. Moltz, 10 Pa. 527.

*R. H. Klein,* of *Knight, Taggart, Klein & Reich,* for appellee.—The specific description contained in the written lease to plaintiff for the garage building eliminates the claim of an easement by implication: Murphy v. Pinney, 86 Pa. Superior Ct. 458; Empire S. & T. Co. v. Lawrence, 27 Pa. Superior Ct. 620.

Plaintiff has not proven an easement necessary and permanent in character: Kieffer v. Imhoff, 26 Pa. 438; Nauman v. Box Co., 280 Pa. 97.

Defendant is not estopped to deny plaintiff's right to enforce the alleged easement by implication: Foulk v. Hampton, 299 Pa. 272.

OPINION BY MR. JUSTICE WALLING, June 21, 1930:

Plaintiff brings this appeal from a final decree dismissing his bill brought to restrain the defendant from occupying a piece of land claimed by the former as a right of way. The record discloses no ground for disturbing the decree. In 1895, William A. Riland bought a lot in Sunbury, with a frontage of forty feet on the north side of Woodlawn Avenue and extending northerly one hundred and ten feet and, because of a jog to the west in the west line, the rear fifty feet of the lot has a width of fifty-eight feet. Soon thereafter Riland erected thereon a two-story brick building, practically covering the entire lot. This building was used by him for many years as a livery stable, to which entrance was gained by a ten-foot wide door opening on Woodlawn Avenue. In 1908 Riland bought a vacant lot of the width of thirty feet situate on the east side of Center Street (herein sometimes called the Center Street lot) and extending back sixty feet to the jog of the livery stable property. He erected thereon an open shed leaning against the brick building for a distance of thirty feet and extending back therefrom twenty-five feet. It

was of cheap construction, consisting of a wooden roof, covered with tar paper and supported by wooden posts and the brick building, to which it was fastened by spikes, bolts and an iron strap. Riland was also engaged in the hauling business and the principal use he made of this Center Street lot and the shed thereon was the storage of heavy wagons and trucks. His truck horses were kept in the rear end of the brick building and, to facilitate their movement to and from the shed and hauling wagons, Riland cut a four-foot wide door through the brick wall facing the shed, through which the horses were led to and from the stable. There is evidence that Riland said he bought the Center Street lot for a driveway to and from the livery stable; but, if so, he never used it for that purpose, as no team, wagon or carriage could pass through the four-foot door. It is clear that Riland used the Center Street lot for storage rather than as a right of way.

In the spring of 1919 he leased the brick building to Minor W. Stein, the plaintiff, for the term of one year, with privilege of one renewal for a like term, to be used as a garage. The lease described the premises as bounded on the west by lot of W. A. Riland and another named lot. Coincident with this lease certain internal changes were made in the brick building and the door leading into the shed was enlarged by plaintiff, with Riland's consent, to the width of ten feet. The term of the lease began April 1, 1919, and Riland died during that month. His widow, however, gave new leases from time to time, the last one being made in 1926, for one year with the option of four additional years, which Stein accepted, and the current term will expire March 31, 1931. In each new lease the Riland lot was named as a western boundary. The lot bought in 1908 has since been assessed separately from the other property. In August, 1929, Mrs. Riland sold both properties to the Bell Telephone Company of Pennsylvania and assigned to it the existing lease. The last named company de-

clared its intention of proceeding at once to build upon the Center Street lot, including that portion occupied by the shed; to prevent which plaintiff filed his bill averring his right to use the lot in connection with the garage. A responsive answer was filed and testimony taken. The chancellor made elaborate findings of facts, from which he drew legal conclusions and entered a nisi decree dismissing the bill, which in due course was made final by the court in banc.

Riland had but the one lot west of the brick building, to wit, that upon which the shed stood, and in each lease it was made a western boundary of the demised premises; hence the Center Street lot was never embraced therein. Had the parties intended to include the shed and lot on which it stood they could easily have so stated or have given Center Street as a western boundary. Being excluded therefrom, it did not pass as an appurtenance. In fact, as a general rule, one piece of land does not pass as appurtenant to another, although an easement therein will. Riland had uniformly used the Woodlawn Avenue entrance for vehicles and it was sufficient to meet the tenant's needs as an entrance way when he first leased the property, as he was then handling Ford cars. Since about 1926, however, he has been and still is handling Packard cars, which are much longer, and because Woodlawn Avenue is only twenty feet wide it is difficult, except for an experienced driver, to enter the garage through that door with the large cars. Hence, to close the lot on Center Street will injure but not destroy plaintiff's business. This, however, is a business reason and affords no ground for treating the Center Street entrance as a way by necessity. A right of way by necessity never exists as a mere matter of convenience: McDonald v. Lindhall, 3 Rawle 492; Titus v. Poland Coal Co., 263 Pa. 24, 36; Francies's App., 96 Pa. 200. Again, there is no implied warranty that premises are suitable for the purpose for which rented: Federal Metal Bed Co. v. Alpha Sign Co., 289 Pa. 175.

The controlling question is, Did Riland, as owner of both lots, subject the Center Street lot to a servitude in favor of the livery stable property? Clearly, under the authorities, he did not. What plaintiff in reality claims is an easement by implication, which can be established only by clear proof: Sharpless v. Willauer, 39 Pa. Superior Ct. 205; 19 C. J. 913. To subject land to such servitude the use thereof must be continuous and permanent. "Where an owner of land subjects part of it to an open, visible, permanent and continuous service or easement in favor of another part, and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be": Grace Methodist Episcopal Church v. Dobbins, 153 Pa. 294, 297. This is quoted by Mr. Justice SIMPSON, speaking for the court, in Nauman v. Treen Box Co., 280 Pa. 97, 100, who adds: "This conclusion has been steadily maintained by us, and has become a rule of property, to which stare decisis compels us to adhere, so long as it is not altered by legislation." See also Liquid Carbonic Co. v. Wallace, 219 Pa. 457; Casey v. Canning, 43 Pa. Superior Ct. 31. The use, however, must be continuous: Becker v. Rittenhouse, 297 Pa. 317. In the instant case, the chancellor finds the use was but occasional and then, as matter of fact, only as a passageway for men or horses. It is impossible to understand how such a use could create a right of way for the passage of vehicles. Furthermore, the chancellor finds that this use was intended as temporary and not permanent and that the shed was a temporary structure, cheaply built and fastened to the brick building so it could be easily detached. To create an easement by implication, the servitude must be obviously permanent in its nature: Adams's App., 7 W. N. C. (Pa.) 86. The use made of the Center Street lot lacked every element necessary to create a right of way for passage of vehicles over it in going to and from the livery stable. Riland, not having created a right of way over

the land, of course, none passed by his lease to the plaintiff.

The leases in plain terms excluding the Center Street lot, and there being no suggestion of fraud, accident or mistake, oral evidence was not competent to contradict their terms: Bank of Hooversville v. Sagerson et al., 283 Pa. 406; Gianni v. Russell & Co., Inc., 281 Pa. 320; Murphy v. Pinney et al., 86 Pa. Superior Ct. 458. Moreover, aside from the testimony of plaintiff, which was objected to and should have been excluded because of the death of Riland, there was no sufficient evidence of an oral agreement affecting the first lease, while the affirmative evidence is that nothing was said about the Center Street lot when any one of the later leases was made.

True, from the beginning of the tenancy the lessor permitted the lessee to occupy and use the Center Street lot and shed until the sale of the entire property in 1929, and, to facilitate such use, allowed the lessee to enlarge to the width of ten feet the door facing the lot and to use the same for the passage in and out of automobiles. To facilitate this use the lessor also had the adjoining curb on Center Street constructed with a slope and removed a small one-car garage on the lot near Center Street. This, however, discloses nothing more than a desire to accommodate the tenant and amounts to no more than a revocable parol license to occupy the Center Street lot. As such it was revoked by a sale of the property: Vollmer's App., 61 Pa. 118. The suggestion that because Riland permitted the tenant to expend money in enlarging the door leading into the shed in 1919, the lessor is now estopped from closing the passageway, was not raised below nor by any assignment of error here and will not be considered.

The decree is affirmed and appeal dismissed at the cost of appellant.