Puleo, Appellant, *v.* Bearoff.

Argued January 7, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Alphonso Santangelo,* for appellant.

*Desmond J. McTighe,* with him *William B. Koch* and *Duffy, McTighe & McElhone,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 22, 1954:

Plaintiff appeals from the dismissal of his bill in equity which sought to enjoin defendants from using

a right of way as to which he claimed an exclusive easement.

Plaintiff is engaged in the scrap iron and metal business and owns and occupies an industrial property along the banks of the Schuylkill River between Bridgeport and West Conshohocken in Montgomery County. The property lies between the main line of the Reading Railroad and the River, and the sole access to it from the public highway is by a private grade crossing over the railroad. Defendants are engaged in the manufacture and sale of cinders, and they likewise own and occupy a property between the River and the main line of the Reading Railroad. Also in the case of this property a private grade crossing over the railroad would be needed to gain access to the public highway.

Plaintiff purchased the first tract constituting part of his present property in 1924; no mention was made in the deed of any right of way over the railroad but plaintiff began, and has ever since continued, to use such a crossing.

In 1946 the Reading Company, by written agreement, gave defendants permission to use "the existing private roadway crossing" over its tracks,* on condition, however, that it should be removed at any time upon notice to that effect given by the Reading Company, and defendants agreed to indemnify the Company from all claims and actions for injury or damage to them or their invitees using such crossing.

In 1948 plaintiff acquired a second tract of land from the Reading Company lying between his other land and that of defendants. The deed stated, as further consideration for the conveyance, that plaintiff agreed to indemnify the Company from all claims and

---

* Defendants' use of the roadway did not involve any passage over any part of plaintiff's land.

actions growing out of the use of "the private crossing at grade" over the Company's tracks "at the location shown" on the "attached blue print, in order to reach the property hereby conveyed."

Since defendants began to use the crossing they have made extensive repairs to it and have cooperated with the Reading Company in widening it from 16 to 40 feet. Plaintiff notified them that they had no right to such use and requested the Reading Company to give them notice to discontinue, but no such notice has been given. Defendants continued to use the crossing, whereupon plaintiff brought the present bill in equity.

We are in accord with the decree of the court below dismissing plaintiff's bill. The question turns on whether he had an exclusive right to the use of the crossing. Assuming, without deciding, that his more than 21 years' use of it since 1924 gave him a right of way by adverse possession (as to which there is grave doubt under the evidence), nevertheless any right so acquired would not necessarily be an exclusive one. As far as the implied grant in the Reading Company's deed of 1948 is concerned, there is no indication therein, expressly or inferentially, of any intention on the part of the Company to relinquish its right to grant a similar privilege to another or others at any time thereafter. It is said in Tiffany on Real Property (3rd ed.) p. 355, §811: "The owner of land subject to a right of way may . . . grant to another or others a similar right of way, . . . provided, . . . the prior grant was not intended to be exclusive."

The grant by the Reading Company to defendants in the deed of 1946, being in terms revocable at the will of the Reading Company, is a license rather than an easement: Restatement, Property, §514(b). But it is not true, as contended by plaintiff, that it was terminated by the Reading Company's deed to plaintiff.

492

While such a license would be automatically revoked by the sale and conveyance of the property burdened by the license (*Vollmer's Appeal*, 61 Pa. 118, 132; *Stein v. Bell Telephone Co.*, 301 Pa. 107, 113, 151 A. 690, 692) the grant to another of a non-exclusive easement over the same right of way certainly had no such effect, especially as the Reading Company not only failed or refused to give notice to defendants of revocation, but showed, by participating in the widening of the roadway for defendants' benefit, that it recognized the license as continuing.

There is no reason why both plaintiff and defendants cannot use the roadway for their business purposes without infringement upon their respective rights; now that the roadway has been greatly widened there would seem to be plenty of room for their trucks to traverse it without mutual interference. "The law is settled that those who have the same rights over an easement must exercise those rights fairly and reasonably so as not to interfere with the fair and reasonable exercise of the same rights by others who possess them.": *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 284, 54 A. 2d 35, 42. As was said in that case (p. 295, A. p. 47), the principle of "live and let live" must control the use of the right of way.

Plaintiff urges that the liability arising out of his agreement to indemnify the Reading Company from claims growing out of the use of the right of way has been improperly extended by the widening of the road and the use of it by defendants. Apart from the fact, however, that defendants have given the Reading Company a similar agreement, the question. whether plaintiff's covenant would be legally. held to cover any such enlarged liability. is not presently before us for determination.

.Decree affirmed at appellant's cost.