## Krill *v.* Petitto, Appellant.

Submitted September 25, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, BOK, EAGEN and ALPERN, JJ.

*John E. Costello, Christ C. Walthour,* and *Kunkle and Walthour,* for appellants.

*Bernard S. Shire,* and *Ezerski and Shire,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 14, 1961:

This is an action to quiet title to real estate. On August 25, 1949, Josephine Petitto conveyed a tract of land in North Belle Vernon, Westmoreland County, to Zeffiro Marino and his wife, by a deed which contained the following reservation: "The grantor herein reserves to herself and her heirs any and all money or consideration that may hereinafter be paid or accrue as damages by reason of the proposed re-location of Rte. No. 31 which may be constructed over or through any part of the lot hereby conveyed."

At the time of the execution of the deed there was in existence a plan (completed in 1946) which provided for a relocation of Route No. 31 through the Petitto property. On June 23, 1952, the Governor approved this plan and, because of the above-stated reservation, the Commonwealth of Pennsylvania paid to Josephine Petitto $950 as damages for the condemnation.

On June 29, 1955, the Marinos conveyed the property to Martha Krill, the plaintiff in this case, by a deed which provided that it was "Subject to reservations made in prior deeds, and to rights of way necessitated by Pennsylvania State Highway T.R. No. 31."

On September 10, 1957, by virtue of another plan for condemnation, signed by the Governor, Route No. 31 (now designated on the records of the Department of Highways as Route No. 118), was made a nonaccess or limited access highway, for which purpose an additional two feet of the litigated property was taken. As a result of negotiations between Martha Krill and the Commonwealth, the latter offered to pay $5500 in settlement of the damages sustained by the property owner because of this taking. A dispute now arose between Krill and Petitto as to the person entitled to the $5500.

Martha Krill filed an action in the Court of Common Pleas of Westmoreland County to dissolve the cloud on her title caused by the claim of Petitto to the damages accruing from the 1957 relocation of the highway. The lower Court found in fact and in law that, by the first highway relocation in 1952, for which Petitto received damages, the reservation in the 1949 deed had been satisfied in full. This appeal followed.

The question involved here is a simple and narrow one: What was meant by the reservation of 1949? A deed, as of course any document, unless specified otherwise in the writing, must be read in accordance with the lights and shadows existing at the time of the execution of the instrument.[1] When Petitto and the Marinos entered into negotiations and a deed passed from the former to the latter, the Commonwealth was proposing to relocate Route 31 through the Petitto property. This was a fact as definitive and unambiguous as sky and earth. And it was confirmed by a plan on record.

---

[1] *Baederwood, Inc. v. Moyer*, 370 Pa. 35.

What were the crucial words in the 1949 reservation referring to Route 31? *"Proposed* relocation." (Emphasis supplied). To propose means "to set before the mind; to bring forward, to state; propound."[2] *"Proposed"* is obviously the past tense of "propose" and therefore means that the proposition, whatever it may be, *has been set* before the mind, it *has been brought forward,* it *has been stated,* it *has been propounded. "Proposed* relocation" cannot possibly mean to propose in the future.

This "proposed relocation", then, was physically and conclusively effectuated in 1952. Thus, when Josephine Petitto signed the receipt for $950 paid to her by the Commonwealth, she in effect wrote across the 1949 reservation the word "Cancelled." She cannot now pretend that she may stand at the boundaries of her former land and exact a toll from the Commonwealth each time it may decide to change, relocate, alter or repair the highway passing through that part of the earth.

The law looks with disfavor on extra-titular rights clinging to property and unless they are attached by means of bonds of clear language, they cease to exist when the purpose for which they were temporarily attached has been fulfilled.

It is hornbook law that "a deed is to be construed most strongly against the grantor."[3] In addition, it is definitely established that the interpretation of a deed depends not on "what the parties may have intended by the language but what is the meaning of the words [employed]."[4]

During the trial the Court allowed oral testimony with regard to the meaning of the term "relocation."

[2] Webster's New International Dictionary, 2nd ed.

[3] *Bundy v. Myers,* 372 Pa. 583.

[4] *Yuscavage v. Hamlin,* 391 Pa. 13.

The appellant assigns this ruling as error. We do not need to pass upon this question because it is too apparent for further discussion, from the language in the reservation of 1949, that the action taken in 1957, whether or not termed a "relocation" could not possibly fall within the scope of the phrase "proposed relocation" and therefore could not have been within the contemplation of the parties at the time of the original reservation.

If Mrs. Petitto had intended to reserve to herself and her heirs and assigns the right to all damages which could possibly accrue from future condemnations of property, she should not have expressly limited herself to damages resulting from the "proposed relocation."

Order affirmed.