In re Joseph FELKER, a/k/a Joseph Felker, Sr. and Marie F. Felker, his wife, Debtors.

Joseph FELKER, a/k/a Joseph Felker, Sr. and Marie F. Felker, his wife, Plaintiffs,

v.

STEWART TITLE GUARANTY COMPANY, Defendant.

STEWART TITLE GUARANTY COMPANY, Plaintiff,

v.

Joseph FELKER, a/k/a Joseph Felker, Sr. and Marie F. Felker, his wife, Defendants.

Bankruptcy No. 5–95–00631.
Adversary Nos. 5–95–00413A, 5–95–00544A.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

July 2, 1997.

Joseph G. Murray, Wilkes–Barre, PA, for debtors.

William Dunstone, Scranton, PA, for Stewart Title.

David Gniewek, Milford, PA, Chapter 7 Trustee.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

Joseph Felker, a/k/a Joseph Felker, Sr., and Marie F. Felker, his wife, ("Felkers, Sr.") filed bankruptcy under Chapter 7 of the United States Bankruptcy Code on May 4, 1995. Scheduled in their list of real property was a certain "life estate in all that certain house and real estate located at R.D. # 2, Box 221, Greentown, Pennsylvania." The alleged life estate was valued at $20,000.00 and was further exempted on Schedule C of the Debtors' Schedules.

On June 30, 1983, Felkers, Sr. conveyed to Joseph M. Felker and Margaret A. Felker ("Felkers, Jr.") the real estate in question situate in the Township of Palmyra, Pike County, Pennsylvania, reserving the right to live upon the property for the rest of their lives.

Shortly thereafter, on September 8, 1983, Felkers, Jr. mortgaged this property to Brokers Mortgage Service ("Brokers"). The title to that property was presumably insured by Stewart Title Guaranty Company ("Stewart").

On September 23, 1983, Brokers assigned that mortgage to Weyerhauser Mortgage Company.

Because of what was perceived as a cloud on the title, Weyerhauser Mortgage Company made demand on Stewart to purchase their mortgage position, which Stewart did.

Stewart executed on the mortgage, which was then in default, and became owner of the Felkers', Jr. interest by deed from the Sheriff of Pike County on January 9, 1991.

Stewart, on February 4, 1993, attempted to cement its position by obtaining an assignment of a judgment in favor of Equal Law and Services, Inc. and against the Felkers, Sr. Subsequently, on February 28, 1995, Stewart requested the sheriff to execute on the property of Felkers, Sr., "including your

life estate interest," in order to satisfy the judgment. (Stewart's Exhibit 11.)

This chain of events has resulted in two litigations springing forth in bankruptcy court.

The first litigation was filed by the Debtors to Adversary No. 5–95–00413A and seeks injunctive relief against Stewart so that Stewart would be enjoined from attempting to collect rent from the property tenants. Stewart's Answer is accompanied by a separate "counterclaim" seeking a declaratory judgment that the deed from Felkers, Sr. to Felkers, Jr. did not create a life estate; that if such a life estate was created, it was forfeited by certain breaches of the duties of life tenants; and that there has been an unjust enrichment by the Debtors by virtue of a mortgage loan transaction occurring June 30, 1983, wherein Brokers became mortgagee to the then-new owners, Felkers, Jr.

Filed within Adversary No. 5–95–00413A is the Debtors' Motion to Avoid a Judicial Lien of Stewart in the alleged life estate owned by the Debtors, Joseph Felker, Sr. and Marie Felker.

The second litigation is an Objection by Stewart to the discharge of a judicial lien. This litigation is filed to Adversary No. 5–95–00544A.

While the pleadings are somewhat convoluted, succinctly stated the issues are (1) whether a life estate was created by the deed of June 30, 1983; (2) if a life estate was created, what is its value; and (3) does the judgment filed against the life estate impair the exemption claimed by the Debtors?

## DISCUSSION

Property interests in bankruptcy are typically determined under state law. *Jason Realty, L.P. v. First Fidelity Bank, NA.*, 59 F.3d 423, 427 (3rd Cir.1995). This is so to prevent forum shopping between the state and the federal courts. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Black's Law Dictionary defines life estate as "[a]n estate whose duration is limited to the life of the party holding it, or some other

person." *Cited, with approval, in Estate of Kinert v. Pennsylvania Dept. of Revenue*, 693 A.2d 643 (Pa.Cmwlth.1997).

The holder of a life estate, i.e., a life tenant, is entitled to both the possession and the use of the property to the exclusion of the remainderman. *Deffenbaugh v. Hess*, 225 Pa. 638, 641, 74 A. 608 (1909). This would include the right of the life tenant to the rents, issues, and profits generated by the parcel during the tenant's life. 51 Am. Jur.2d *Life Tenants and Remaindermen*, § 32 (1970). That a life tenant is entitled to the income from the corpus, is well-established in Pennsylvania. *In re Nirdlinger's Estate*, 290 Pa. 457, 461, 139 A. 200, 202 (1927).

Implicit, of course, to the life tenant's rights to rent is the life tenant's power to "underlease" the property for a lesser term. ("At common law, ... it was the established doctrine that a tenant for life, with a general power to make leases, could make only leases in possession, and not leases in reversion or in futuro.") *United States v. Noble*, 237 U.S. 74, 82, 35 S.Ct. 532, 535–36, 59 L.Ed. 844 (1915).

Furthermore, the life tenant generally has the power to transfer the estate to such extent no greater than he or she has. Restatement of Property § 124 (1936). It is even possible, under some circumstances, for a life tenant to consume or deplete the estate, if such is consistent with the conveyance. *Allen v. Hirlinger*, 219 Pa. 56, 59, 67 A. 907, 908 (1907).

The life tenant is empowered to mortgage the life estate, and that interest may be sold through foreclosure. 51 Am. Jur.2d *Life Tenants and Remaindermen*, § 99 (1970). In some cases, even the remainderman's interest may be encumbered by the mortgage of a life tenant. *McCreary v. Bomberger*, 151 Pa. 323, 328, 24 A. 1066 (1892).

This package of rights possessed by a life tenant is not without the corresponding duties and obligations the tenant may owe to the successor remaindermen.

A life tenant is entitled to possession and enjoyment of the property as long as the estate endures. He may convey or lease his interest, but he may not disregard the rights of those who take when his life estate ends. So, he is responsible for ordinary course of business repairs and maintenance; but improvements of a permanent nature, without the acquiescence of the remaindermen, are at his own expense even though the property is thereby made more valuable. The life tenant must pay the taxes, municipal assessments for sidewalk paving, and mortgage interest accruing during his ownership. [Furthermore], the life tenant must not commit or permit waste.

P. Nicholson Wood, *Ladner on Conveyancing in Pennsylvania* § 1:05, at 8 (3rd ed.1961).

With this legal background, I draw the parties' attention to the specific facts of this case.

The conveyance from Joseph Felker, Sr. and Marie F. Felker (Felkers, Sr.) to Joseph M. Felker and Margaret A. Felker (Felkers, Jr.) by deed dated June 30, 1983 is claimed by the Debtors to have reserved a life estate. The specific language relied upon by the Debtors reads as follows: "EXCEPTING AND RESERVING to the Grantors herein and each of them, the right and privilege to live upon the property herein conveyed for the remainder of their natural lives."

The threshold issue is whether language, such as found in this deed, can support the reservation of a life estate as that term is understood in Pennsylvania jurisprudence. This finding is critical to the Debtors' case. The attributes associated with a life estate are quite different from those flowing from a tenancy less than freehold or a personal license or privilege. (*See, for example, Baldesberger v. Baldesberger*, 378 Pa. 113, 105 A.2d 713 (1954)).

A life estate, along with a fee simple, is a freehold estate. Chester Smith, *Real Property Survey*, at 3 (1956). A freehold estate is typically characterized by the right of possession as well as title. Title is the right of ownership of the property. *P.*

*Nicholson Wood, Ladner on Conveyancing in Pennsylvania* § 1:01 at 2 (3rd ed.1961). A less than freehold estate, such as a tenancy at will, can be identified by the right to possession but not title. (*See id.* at 11). This can be further distinguished from a license where possession remains in the licensor and the licensee has a mere privilege of being on the land without being treated as a trespasser. (Chester Smith, *Real Property Survey,* at 102.) A license is an authority to do an act or a series of acts on the property of another without possessing an estate therein. *Baldwin v. Taylor,* 166 Pa. 507, 31 A. 250 (1895), *In re Shipley's Estate,* 45 Pa.Super. 570, 573 (1911).

▇ If the Debtors possessed a mere license or privilege to occupy the property, it is clear that the license would have terminated on the foreclosure by Stewart against the licensors, Felkers, Jr. inasmuch as a license is ordinarily revocable at will. *Thompson v. Commonwealth,* 214 Pa.Super. 329, 257 A.2d 639 (1969). The license would not extend beyond the transfer of the licensor's property. *Puleo v. Bearoff,* 376 Pa. 489, 103 A.2d 759 (1954), *Sterner v. Freed,* 391 Pa.Super. 254, 259, 570 A.2d 1079, 1081 (1990). On the other hand, if the Debtors were possessed of a life estate, then the Stewart foreclosure against Felkers, Jr. could only vest such title in Stewart as Felkers, Jr. had, i.e., a remainderman's interest.

▇ A review of the conveyance of June 30, 1983 must begin with an analysis of the instrument. In performing that task, the Court utilizes the fundamental doctrine that it is the meaning of the words used that governs the interpretation of a deed, not what the parties may have intended by the language used. *Krill v. Petitto,* 405 Pa. 203, 175 A.2d 54 (1961). While "the meaning of the words" are of special import, this Court is further advised that no particular words or phrases are necessary in order to create or reserve a life estate. *Appeal of the Board of School Directors of the Owen J Roberts School District,* 500 Pa. 465, 470, 457 A.2d 1264, 1266 (1983), *Cheroka v. Tobolski,* 151 Pa.Super. 238, 240, 30 A.2d 152 (1943), Restatement of Property § 107 cmt. e (1936). "A deed will operate to convey a life estate where, from a consideration of the entire instrument, such appears to be the grantor's intent." 26 C.J.S. Deeds § 112 (1956).

▇ The deed at issue is a warranty deed of standard form commonly utilized in effecting a conveyance from grantor to grantee. The operative words or granting clause is quite sufficient to pass title in fee simple. 21 P.S. § 2. The clause at issue is found between the deed description and the recital, in the encumbrance clause. It is specifically indicated that the grantor, Felkers, Sr., reserved or excepted "the right and privilege to live upon the property herein conveyed for the remainder of their natural lives."

As stated previously, however, this "right and privilege" is significantly less than that quantum of rights normally associated with a life estate. Ostensibly, merely reserving the right to live on premises may not include the right to collect rent from others if their tenancy would dispossess Felkers, Sr. As indicated earlier, the right of the life tenant to collect rents is a fundamental aspect of the life estate.

Moreover, I cannot say there is any ambiguity in the limited rights retained by Felkers, Sr. The grant to Felkers, Jr. has all the characteristics of an outright fee simple transfer, including the standard appurtenance clause reading as follows:

Together with all and singular the buildings, improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof: and all the estate, right, title interest, property claim and demand whatsoever of the said parties of the first part, in law, equity or otherwise, howsoever, in and to the same and every part thereof.

Included, in the appurtenance clause, is virtually every possible right associated with ownership of the real estate including the right to "rents, issues, and profits." The intention of the parties appears clear. Only the "right and privilege to live upon the property" is reserved to the grantor.

Even if such terminology could be construed as doubtful, the construction most favoring the grantee and against the grantor would be adopted. *Ransberry v. Brodhead's Forest & Stream, Ass'n,* 315 Pa. 513, 515, 174 A. 97 (1934), *Lacy v. Montgomery,* 181 Pa.Super. 640, 648, 124 A.2d 492, 496 (1956).

This Court concludes that Felkers, Sr. retained a mere license or privilege to live upon the property and not a life estate.

This conclusion is supported by the Debtors' own testimony which indicated little willingness to shoulder the life tenants' normal obligations. Marie Felker testified that after the conveyance, her son made improvements. (Transcript of 07/30/96 at 41.) The conveyance to her son was a gift so that her son could operate a business on the premises. (Transcript of 07/30/96 at 42, 45.) The last time the Felkers, Sr. paid the real estate tax was 1983. (Transcript of 07/30/96 at 86.) According to Joseph Felker, Sr., the mortgage payments were made by Felkers, Jr. (Transcript of 07/30/96 at 144.) The foreclosure action was initiated in 1989 when the mortgage payments lapsed. (Transcript of 07/30/96 at 57.) The taxes were in the name of Felkers, Jr. (Transcript of 07/30/96 at 59.) After the foreclosure, Felkers, Sr. sent the tax bill to Stewart in 1991 and also referred the insurance company to it. (Debtors' Exhibit D–5.) Stewart has asked that Felkers, Sr. pay the property taxes and they have refused. (Transcript of 07/30/96 at 88.) It is clear that the life tenants' obligation to pay maintenance [1], insurance, property taxes [2], and mortgage interest [3] has been generally ignored by Felkers, Sr.

In the trial of this matter, Felkers, Sr. constantly repeated the theme that they were never told what their obligations as life tenants were. The life tenant is granted the right of possession, but not without the various corresponding obligations earlier related. For this Court to "excuse" those obligations based on a failure of the tenant to perceive their existence would be to give countenance to the ignorance of one's legal duties. This Court will not encourage such behavior. "The rule that 'ignorance of the law will not excuse' is deep in our law." *Texaco, Inc. v. Short,* 454 U.S. 516, 546, 102 S.Ct. 781, 801, 70 L.Ed.2d 738 (1982). The Court finds that Felkers, Sr. did not create a life estate by their conveyance of June 30, 1983. Moreover, there is nothing in the testimony of Joseph Felker, Sr. or Marie Felker that would alter this Court's conclusion.

1. *Reibold v. Evans* 65 Ohio App. 123, 29 N.E.2d 369 (1940).

2. *Appeal of the Board of School Directors of the Owen J Roberts School District,* 500 Pa. 465, 457 A.2d 1264 n. 8 (1983).

3. *Holzhauser v. Iowa State Tax Comm.,* 245 Iowa 525, 62 N.W.2d 229 (1953).