**[J-91-2016] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| W. LOWELL STARLING AND NANCY STARLING, | : | No. 30 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellees | : | Court at No. 1779 MDA 2014 dated |
| | : | August 11, 2015, Reconsideration |
| | : | Denied October 14, 2015, Reversing |
| v. | : | and Remanding the Order of the Adams |
| | : | County Court of Common Pleas, Civil |
| | : | Division, at No. 2010-S-498 dated |
| LAKE MEADE PROPERTY OWNERS ASSOCIATION, INC., | : | September 26, 2014. |
| | : | |
| | : | ARGUED: September 14, 2016 |
| Appellant | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: May 25, 2017**

I join the learned majority with respect to its conclusions regarding the ownership and easement rights as they relate to Custer Drive. However, I respectfully disagree with the majority's holding summary judgment was properly entered in favor of appellant, Lake Meade Property Owners Association, Inc. (the Association), and against appellees W. Lowell and Nancy Starling (the Starlings) concerning the ownership of the Disputed Property. I further disagree with the majority's legal conclusion that the Disputed Property is not owned by the Starlings, and while it is also not owned by the Association, it is available for the Association's recreational use. In my view, this question of ownership is not entirely free from doubt, and I would therefore hold neither party is entitled to summary judgment on this issue. Accordingly, I dissent.

Our review of summary judgment involves a question of law; our standard of review is *de novo* and scope of review is plenary. Accordingly, we may examine the

entire contents of the record. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 (Pa. 2007) (setting forth scope and standard of review of summary judgment by appellate court). Summary judgment may be granted only in cases where the right to judgment is clear and free from doubt. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007), *citing Marks v. Tasman,* 589 A.2d 205, 206 (Pa. 1991). In a motion for summary judgment the moving party — here, the Association — has the burden of proving the nonexistence of any genuine issue of material fact. Moreover, the record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the Association as the moving party. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005), *citing Jones v. SEPTA*, 772 A.2d 435, 438 (Pa. 2001).

In discussing the ownership of the Disputed Property, the majority acknowledges there are competing accounts of the Lake Meade Subdivision Plan (the Plan) with respect to the boundary line of the Starlings' property, identified as Lot 726. Moreover, the majority further recognizes there exists a "lack of unequivocal denominations establishing the northern and southern ends of the Disputed Property." Majority Opinion, slip op. at 28-29. The majority further acknowledges the existence of an "arguable ambiguity" regarding definition of the boundary line in this matter. *Id*. at 30. In resolving the ambiguity as to the boundary line of the Starlings' Lot 726, the majority fails to adhere to the standard for reviewing a summary judgment claim and instead changes this question of fact with respect to the location of the boundary line into an issue of law, and then resolves the question in favor of the Association.

The majority opines the boundaries of the lots as illustrated in the Plan and identified only by lot number in the Starlings' deed should be construed in the same manner as a provision of a contract to avoid an absurd result. The majority then states,

in order to avoid this "absurd result," the developer of the subdivision, Lake Meade Incorporated (LMI) "must have intended [Lots 726 and 1020] to be bounded by their boundaries' respective points of tangency with Custer Drive." *Id.* at 30. This determination — which is not provided for or stated in the Plan, the Association's deed or the Starlings' deed — results in the Disputed Property lying outside of Lot 726, such that it apparently does not belong to any person or entity and is thus left for the Association to use at its will. I cannot support this analysis.

First, in resolving the acknowledged ambiguity which arises from the lots being illustrated without metes and bounds in the Plan, and identified only by lot number in the Starlings' deed, the majority ostensibly relies on contract interpretation principles but does not acknowledge the well-settled principles more properly applicable to interpreting a deed or subdivision plan. In interpreting a deed, this Court's "primary object[ive] is to ascertain and effectuate the intention of the parties." *In re Conveyance of Land Belonging to City of DuBois*, 335 A.2d 352, 357 (Pa. 1975) (citations omitted). Moreover, "the interpretation of a deed depends not on 'what the parties may have intended by the language but what is the meaning of the words [employed].'" *Krill v. Petitto*, 175 A.2d 54, 55 & n.4 (Pa. 1961), *quoting Yuscavage v. Hamlin,* 137 A.2d 242, 244 (Pa. 1958). Additionally, "[w]here a deed or agreement or reservation therein is obscure or ambiguous, the intention of the parties is to be ascertained in each instance not only from the language of the **entire written instrument** there in question, but also from a consideration of the subject matter and of the surrounding circumstances." *New Charter Coal Co. v. McKee*, 191 A.2d 830, 834 (Pa. 1963) (emphasis in original), *quoting Commonwealth v. Fitzmartin*, 102 A.2d 893, 894 (Pa. 1954). Furthermore, "[i]f a doubt arises concerning the interpretation of the instrument it will be resolved **against**

the party who prepared it." *Ralston v. Ralston*, 55 A.3d 736, 742 (Pa. 2012) (emphasis supplied) (citations omitted).

In holding as a matter of law that the boundary lines to Lots 726 and 1020 exist at points of tangency to Custer Drive, the majority neither examines the entirety of the Plan and the intention of parties, nor interprets the Starlings' deed against the party who prepared it — LMI. In determining Lots 726 and 1020 terminate at an unidentified point of tangency to Custer Drive, the majority holds a substantial parcel of land, including the Disputed Property, belongs to no entity or person. The majority further adopts the trial court's finding that this "small strip of undesignated shoreline property" can be used by the Association for "any lawful use." *See* Majority Opinion, slip op. at 33, *citing* Trial Court Opinion (T.C.O.) at 14-15. I am not persuaded we can make these determinations as a matter of law.

The majority baldly states the nearest point of tangency to Lot 726 creates the boundary to Lot 726, holding this Court can determine *what* a boundary is as a matter of law. *See* Majority Opinion, slip op. at 31 & n.29. This conclusion, however, not only fails to resolve the ambiguity, but also is unsupported by the documents. The Plan depicts no fewer than five points of tangency to Custer Drive between Lots 726 and 1020. There is nothing depicted on the Plan or in the Starlings' deed to support the majority's legal conclusion that the nearest point of tangency (or any point of tangency for that matter) to a lot creates a boundary line, leaving a significant undesignated portion of shoreline without an owner. Actually, such an interpretation creates the absurd result the majority would discourage. The majority also allows a portion of the Lake Meade Subdivision to go without an owner of record, contrary to the rest of the Plan, which identifies each lot with a specific number, and where lot numbers are then used in the deeds to describe the property being transferred to each owner. In fact,

there is nothing in the Starlings' deed describing the boundaries to Lot 726 or mentioning a boundary being created at a point of tangency. *See* Exhibit G, Second Amended Complaint. Moreover, even assuming *arguendo* that a point of tangency should be used as a boundary to Lots 726 and 1020 when interpreting the Plan and deed, in my view, it would be more in line with the underlying intent of the documents to use one of the five points of tangency to create a boundary **separating** Lot 726 from Lot 1020, as opposed to creating "undesignated shoreline property" to be used by the Association in any manner it chooses. Respectfully, this latter reading more correctly resolves any ambiguity in the Starlings' deed and Plan **against** LMI as the granter — as we are required to do — and it also ascertains ownership of the Disputed Property while considering the **entire written instrument**. *See, e.g., Ralston*, 55 A.3d at 742; *New Charter Coal Co.*, 191 A.2d at 834.

Moreover, the Association's deed from LMI clearly identified the only parcels of land granted to the Association as follows:

> *WITNESSETH, that the said* Lake Meade, Inc. . . . for and in consideration of the sum of One ($1.00) . . . Dollar *lawful money of the United States of America unto . . . it . . . well and truly paid by the said* Lake Meade Property Owners Association . . . *at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged,* . . . has . . . *granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents* . . . does . . . *grant, bargain, sell, alien, enfeoff, release and confirm upon the said* Lake Meade Property Owners Association, its successors . . . *and assigns,* ALL those roads, the dam, lake and basin and the lots numbered 30, 74, 138, 171-A, 281, 288, 397, 410, 515, 549, 625, 634, 647, 672, 673, 713, 780, 825, 887, 946, 1036, 1050, 1072, 1111, 1135, 1175, 1222, 1271, 1309, 1324, 1391, 1454, 1455, 1456, 1463, and 1472 all more particularly shown on the plans of lots titled Lake Meade Subdivision, duly recorded in the office of the Recorder of Deeds of Adams County, Pennsylvania, in Plat Book 1, pages 1, 4, 5, 6, 7, 19, 20, 21, and 23, in Reading and Latimore Township, Adams County, Pennsylvania.

*See* Exhibit D, Second Amended Complaint. With respect to land granted, the Association's deed only grants specific enumerated lots along with the roads, dam, lake and basin of the subdivision, and it is illogical to conclude there could be additional land granted to the Association which is not described in this paragraph of the Association's deed. In finding the Disputed Property and other parts of the shoreline are available to the Association for "any lawful use," the majority provides the Association with property rights not specifically granted, and denies the owners of Lots 726 and 1020 the property rights actually provided in their deeds. *See* Majority Opinion, slip. op at 33.

Further, the majority's interpretation is contrary to the language of the instrument. Careful examination of the Plan and the Association's deed yields a finding that the property and parcels granted to the Association for communal use are specifically mentioned in the Association's deed. Cogent support for this interpretation is the fact that the only lot included on both the section of the Plan on which the Disputed Property lies and identified in the Association's deed is Lot 713. Lot 713, a lot unquestionably conveyed to the Association from LMI on the 1968 Association's deed, is clearly identified on the Plan as "Lake Access," which must be used in a manner lawfully permitted. There is nothing in the Plan or the Association's deed that would support a finding that any property "without a specific designation" can be used by the Association as if the Association owned such property. My reading of these provisions in the Association's deed leads to my disagreement with the majority's conclusion that the Disputed Property — which is not in any way identified on the Association's deed as a common area or as property transferred from LMI — is permitted to be used by the Association.

Thus, in my view, the question in this matter is where the boundary line between Lots 726 and 1020 lies, and such question cannot be resolved as a matter of law. The

majority's reliance on *Pocono Manor Association v. Allen*, 12 A.2d 32 (Pa. 1940), to resolve this issue is unpersuasive, as *Pocono Manor* is largely inapplicable to determining the location of a boundary line. In fact, despite its claimed reliance on *Pocono Manor*, the majority has failed to examine the issue actually resolved by the Court in that case. *Pocono Manor* did not involve interpretation of a boundary line or deed, or determine ownership of a parcel of land. Rather, it concerned the use of property within a subdivision and the application and interpretation of stated deed restrictions regarding such use. The restrictions attached to the deed were found by the *Pocono Manor* Court to be "'the law' as to the . . . use of the premises." *Pocono Manor*, 12 A.2d at 34. The Court then proceeded to equate the interpretation of the restrictions regarding the use of property in the subdivision with the interpretation of statutes. *Id.* The issue before us is not whether a use of the Disputed Property is prohibited by specific restrictions in a deed, but involves the determination of where the boundary line to Lot 726 lies and who owns the Disputed Property, depending on that boundary line. As we are not interpreting a deed restriction, law, or statute, I am not persuaded by the majority's rationale for resolving the acknowledged ambiguity with respect to the boundary line.

The identification of the boundary line in this matter cannot be determined as a matter of law for purposes of summary judgment. "[W]here a boundary line, or corner, is actually located is a **question for the trier of fact**." *Corbin v. Cowan*, 716 A.2d 614, 617 (Pa. Super. 1998) (resolving dispute regarding location of common boundary line and ownership rights of dirt road) (emphasis added), *quoting Plott v. Cole*, 547 A.2d 1216, 1219 (Pa. Super. 1988); *see also Plauchak v. Boling*, 653 A.2d 671, 675 (Pa. Super. 1995) (noting "**location** of . . . boundary line is a matter for the trier of fact" in action in ejectment and/or to quiet title regarding location of boundary line and

ownership of property surrounding boundary line) (emphasis in original).  Pursuant to this established standard, the boundary of Lot 726 is a factual question for the jury.

In my view, the Starlings have provided ample evidence to present the matter of ownership of the Disputed Property, and the location of the boundary line to the jury.  The Starlings have provided documentation to show they — and not the Association — pay property taxes for the Disputed Property.[1]  *See* Exhibit X, Second Amended Complaint.  Further, in 2007, the Association acknowledged the boundary line for Lot 726 "is undeterminable."  Exhibit M, Second Amended Complaint.  When reviewing these facts in the light most favorable to the Starlings as the nonmoving party, as we must, I conclude there remain substantial issues of material fact regarding the ownership of the Disputed Property.  Such questions should be left to the province of the fact-finder, not the trial court judge at the summary judgment stage, or an appellate court reviewing summary judgment already granted.  Accordingly, I would remand the case for findings of fact regarding the ownership of the Disputed Property and boundary line of Lot 726.  Only after such factual findings are made may the question of whether the Starlings are entitled to further relief in the form of trespass and ejectment be entertained.

---

[1] The majority questions my citation to this allegation, noting the "assessment and payment of taxes on property is not proof of title."  *See* Majority Opinion, slip op. at 23, n.23.  I note citation to Starlings' allegations is not meant to definitively demonstrate or support a finding in favor of the Starlings with respect to the Disputed Property.  Rather, I refer to them only to demonstrate the record contains genuine issues of material fact regarding ownership.  Our review in this appeal is limited to determining whether summary judgment was properly granted, that is, whether any genuine issues of material fact exist; any such material disputes — based on allegations such as these — must be resolved against the Association as the party who moved for summary judgment.  *See Fine*, 870 A.2d at 857, *citing Jones*, 772 A.2d at 438.